# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* STRINGER, Minors.

UNPUBLISHED
November 20, 2018

No. 342833
Wayne Circuit Court
Family Division
LC No. 17-000564-NA

*In re* BULLEY, Minor.

No. 342835
Wayne Circuit Court
Family Division
LC No. 17-000561-NA

*In re* BULLEY/MAY, Minors.

No. 342837
Wayne Circuit Court
Family Division
LC No. 17-000561-NA

Before: M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal the trial court orders terminating their parental rights to their respective minor children. In Docket No. 342833, respondent-father, KS,[2] appeals as of right the trial court order terminating his parental rights to the minor children, KSMS and KMS, under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*v*). In Docket No. 342835, respondent-father, AB, appeals as of right the trial court order terminating his parental

---

[1] *In re KS Minors; In re AB/May Minors*, unpublished order of the Court of Appeals, entered March 27, 2018 (Docket Nos. 342833; 342835; 342837).

[2] In order to protect the identities of the minor children, we will only refer to respondent-fathers by their initials.

-1-

rights to the minor child, AIDB, under MCL 712A.19b(3)(g), (h), and (j). In Docket No. 342837, respondent-mother appeals as of right the trial court order terminating her parental rights to AIDB and JMM under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), and (j). We affirm in Docket Nos. 342833 and 342837. In Docket No. 342835, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

In April 2017, the Department of Health and Human Services (DHHS) filed a petition seeking removal of JMM, AIDB, and PES from their home with respondent-mother and KS for reasons of physical abuse and failure to protect. Respondent-mother was identified as the mother of all three children. Respondent-mother was married to KS, and he was identified as the father of PES and the alleged perpetrator of the physical abuse. AB was identified as the father of AIDB; AB was incarcerated at the time of the alleged abuse and his earliest release date was January 5, 2019. JMM's father was identified as a non-respondent in this case, and JMM was released to his father.

DHHS sought termination of respondent-mother's parental rights to all three children, termination of AB's parental rights to AIDB, and termination of KS's parental rights to PES. DHHS also filed a petition seeking termination of KS's parental rights to KSMS and KMS for reasons related to the physical abuse of PES. DHHS recommended that KSMS and KMS remain with their mother, who was a non-respondent parent.

The petitions indicated that PES was admitted to a pediatric intensive care unit on March 14, 2017, after suffering a cardiac arrest. KS initially reported that he picked up PES when he was crying and started burping him. PES began throwing up and "the vomit had little specks of blood in it." After calling respondent-mother, KS called 911 and then started CPR. When EMS arrived, PES had no heartbeat or pulse. EMS personnel continued CPR until PES was revived. At the hospital, a CT scan revealed that PES had a subdural hematoma, and a chest x-ray showed he had healing fractures on his right sixth and seventh ribs. Additional fractures were suspected. PES remained in critical condition, required a ventilator, and lacked brain function. He died during the pendency of the proceedings.

Throughout the proceedings, there was significant discussion about PES's special needs because he was born at 26 weeks' gestation and was discharged approximately 82 days after birth with oxygen, an apnea monitor, and medications to assist with his lung development. PES was also born at stage three of blindness in both eyes. However, the severe, life-threatening injuries PES sustained while in the care and custody of respondent-mother and KS was the primary issue in the case. Medical expert testimony established that PES's injuries raised a high suspicion of non-accidental trauma given that the injuries were at various stages of healing and could not be explained as the result of CPR or a single fall. The testimony indicated that "a considerable amount of force" would be necessary to produce the fractures to PES's ribs. In addition, a fall alone was insufficient to explain PES's subdural hematoma and the fractures of PES's fibula and tibia were indicative of child abuse.

By all accounts, respondent-mother was absent during the events that led to PES's hospitalization, and KS testified that he shook and dropped PES prior to seeking medical attention. KS added that he believed the rib injuries could be explained by his acts on a prior occasion when he "massaged" the infant to produce a bowel movement. Nonetheless, KS maintained that he never purposely inflicted pain on PES, and respondent-mother continued to reside with KS. She reported that she did not believe that he presented a risk to herself or her older children.

The record also reflects that AB acknowledged that he was presently unable to provide care and custody for AIDB because of his incarceration. However, he suggested that his family would be willing and able to provide care and custody on his behalf. AB maintained contact with DHHS workers and sought to participate in any services available to him. Further, AB's mother stated that she intended to help care for AIDB and she began participating in two to three visits per week, during which AB would speak to his son on the phone.

The trial court took jurisdiction over the children following an adjudication hearing, and, in the same proceedings, it found there was clear and convincing evidence to establish grounds to terminate each respondent-parent's parental rights. The matter was set for a best interests hearing, and, after the hearing, the court found by a preponderance of the evidence that termination of each respondent-parent's parental rights was in the best interest of each of the children.

## II. JURISDICTION

### A. STANDARD OF REVIEW

"We review the trial court's decision to exercise jurisdiction for clear error in light of the court's findings of fact." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 296-297.

### B. ANALYSIS

Respondent-mother first argues that the trial court erred by not providing her with notice of her appellate rights immediately after making a determination regarding jurisdiction. However, the trial court is only required to advise the respondent that he or she may appeal "[i]mmediately after entry of an order terminating parental rights . . . ." MCR 3.977(J)(1). Accordingly, the trial court was not obligated to provide respondent-mother notice of her appellate rights immediately after taking jurisdiction.

Respondent-mother also asserts that the court erred when it obtained jurisdiction over JMM and AIDB because there was no indication that she had created an environment that was unfit for her children, there were no allegations that she neglected or abused JMM or AIDB, and there was no allegation that she was ever inappropriate with the children. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *BZ*, 264 Mich App at 295. The court may take jurisdiction if the respondent's conduct created a situation in which the child's "home or environment, by reason of neglect, cruelty, drunkenness, criminality,

or depravity . . . is an unfit place for the juvenile to live in." MCL 712A.2(b)(2). "[T]he failure of one parent to protect a child from abuse or neglect by the other parent can be grounds for taking jurisdiction over the child . . . ." *In re SLH,* 277 Mich App 662, 670; 747 NW2d 547 (2008).

Here, despite learning that KS had injured PES, respondent-mother continued to express a belief that the children were not at risk in his care and planned to continue her relationship with him. It is undisputed that PES suffered significant injuries and that his medical needs were neglected following several events that may have resulted in injury. This combination of facts is sufficient to support the court's finding by a preponderance of the evidence that the baby had been left without proper care and custody, thus creating "an unfit place for [a] juvenile to live in." MCL 712A.2(b)(1).

Respondent-mother nevertheless argues that the trial court should have assumed jurisdiction over PES, but not her older children. However, "[a] child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child. Abuse or neglect of the second child is not a prerequisite for jurisdiction of that child and application of the doctrine of anticipatory neglect." *In re Gazella*, 264 Mich App 668, 680-681; 692 NW2d 708 (2005), superseded by statute on other grounds in MCL 712A.19b(5). In this case, the trial court concluded that respondent-mother either participated in PES's abuse or failed to protect him from physical abuse inflicted by KS. Because both findings are supported by the record, the trial court did not clearly err by taking jurisdiction over all of respondent-mother's children.

## III. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a ground for termination has been established is reviewed for clear error. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). Likewise, the issue of whether petitioner made reasonable efforts to preserve and reunify the family is reviewed for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

### B. ANALYSIS

The trial court terminated KS's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*v*); it terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j); and it terminated AB's parental rights to his child under MCL 712A.19b(3)(g), (h), and (j). At the time of the proceedings,[3] the relevant statutory provisions provided:

---

[3] Effective June 12, 2018, MCL 712A.19b(3)(g) and (k) have since been substantively amended. See 2018 PA 58.

-4-

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

\* \* \*

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

\* \* \*

(*v*) Life-threatening injury.

KS argues that termination of his parental rights to KSMS and KMS was not supported by MCL 712A.19b(3)(b)(*i*) because PES had significant special needs that his older children do not have and, therefore, there is no reasonable likelihood that KSMS and KMS would suffer abuse if he retains his parental rights. We disagree. PES had significant needs when he was born; however, his injuries were not the result of his medical needs or neglect of his medical needs. Rather, a medical expert opined that PES's injuries were the result of non-accidental trauma. Furthermore, given the different stages of healing, the injuries occurred on more than one occasion, which is indicative of child abuse. Moreover, when asked about PES's rib injuries, KS testified that they might have occurred when he "massaged" the infant to produce bowel movements. Furthermore, KS reported to DHHS an incident where "he fell asleep on the couch with PES lying on his chest, and he jumped up in the middle of the night and forgot PES was lying on him, and he fell and hit his head on the floor." KS did not seek medical attention for PES at that time. KS also testified that he "shook" and then "dropped" PES on March 14, 2017. KS explained, "I dropped him, but it wasn't like a drop, it was just like, I don't want this. I'm in this situation and I'm by myself, this woman's other two kids, here with my son. I panicked. It was a messed up moment for me at the time." KS told DHHS that "he didn't know how hard he laid PES on the floor" on the date he was hospitalized. Thus there is evidence that a sibling of KSMS and KMS was physically injured by KS and that the injury was non-accidental.[4]

KS argues that neither of respondent-mother's children who resided with KS ever suffered injury, abuse, or other harm while in KS's care, which would support his position that his own children would not be harmed. However, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH,* 245 Mich App 77, 84, 627 NW2d 33 (2001) (quotation marks and citation omitted). Although there was no evidence that the other children had ever suffered injury, abuse, or harm by KS, evidence of actual harm is not required, and the physical harm to PES, who was a sibling of each of the children involved in this case, was sufficient to meet the statutory standard.

KS next contends that there is no reason to believe that he could not remedy his feelings of being overwhelmed or frightened in an emergency or maintain safe sleeping practices in the future and that a parenting plan should be put into place to afford the opportunity to demonstrate that he can safely parent KMS and KSMS. However, KS was not entitled to a treatment plan because this case involved a termination petition under MCL 712A.19a(2)(a), which authorizes an original permanent custody petition when the abused child has suffered life-threatening injuries. In such a case, DHHS is not required to provide reunification services when termination of parental rights is the agency's goal. *HRC*, 286 Mich App at 463. Furthermore,

---

[4] KS argues that the trial court erred by terminating his parental rights because there is no clear and convincing evidence that KS caused the injuries that ended PES's life. However, MCL 712A.19b(3)(b)(*i*) requires only that a parent's act cause a physical injury—not that death be the result.

given KS's acts resulting in PES's injuries and his poor judgment in the face of a medical crisis, there remains a reasonable likelihood that any other children could suffer harm or injury while in respondent-father's care.[5]   The court did not clearly err by finding grounds to terminate KS's parental rights under MCL 712A.19b(3)(b)(*i*).

## 2.  DOCKET NO.  342837

Respondent-mother argues that petitioner did not establish by clear and convincing evidence that she either caused the injuries or had an opportunity to prevent the injuries to PES. Yet, the facts of this case are nearly identical to the facts of *In re Ellis*, 294 Mich App 30; 817 NW2d 111 (2011).   In *Ellis*, the respondent-parents lived together, and both testified that they were the only individuals who took care of the child.   *Id*. at 35.   Their child suffered several non-accidental injuries, and the respondents' explanations for the injuries were "inconsistent with the extent and nature of the child's injuries," which were highly indicative of child abuse, requiring a very high force of impact, and were inconsistent with those caused by accident.   *Id*.   Because the injuries were at various stages of healing, it was apparent that the child had suffered multiple instances of abuse.   *Id*.   This Court concluded that the trial court properly determined that termination was proper under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j) because at least one of the parents had perpetrated the abuse and at least one of them had failed to prevent it, and that it did not matter which did which.   *Id*. at 35-36.

Similarly, the evidence in this case shows that PES suffered numerous non-accidental injuries that occurred on more than one occasion, that his parents lived together, and that the parents shared childcare responsibilities and were PES's sole caregivers.   Furthermore, KS and respondent's explanations were insufficient to explain all the non-accidental injuries.   Thus, on this record, respondent-mother either caused some of the injuries or failed to protect PES from ongoing physical abuse.   Accordingly, the trial court did not clearly err by finding that the statutory grounds for termination of respondent-mother's parental rights were established by clear and convincing evidence under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), and (j).[6]

## 3.  DOCKET NO.  342835

AB argues that the trial court erred by finding that DHHS made reasonable efforts at reunification.   DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights.   MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Our Supreme Court has explained that " '[r]easonable efforts to reunify the child and the family must be made in *all* cases' except those involving aggravated circumstances . . . ."   *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), quoting MCL 712A.19a(2).   DHHS is not relieved of the statutory duty to make reasonable efforts with respect to an incarcerated parent.   *Id*. at 159.

---

[5] Given our resolution, we need not address the additional grounds under which KS's parental rights were terminated.   *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

[6] Given our resolution, we decline to address whether termination was also proper under MCL 712A.19b(3)(g).   See *HRC*, 286 Mich App at 461.

In such cases, consideration of an incarcerated parent's suggestions for relative placement is critical, as "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination . . . . [A]lthough the parent is in prison[,] he need not *personally* care for the child." *Id*. at 160-161. Thus, courts must evaluate whether an incarcerated parent could provide proper care and custody in the future by voluntarily granting legal custody to relatives for the remaining term of his or her incarceration. *Id.* at 163. Thereafter, the "court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *Rood*, 483 Mich at 104. In other words, "[t]he adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *Id.* at 89.

From the beginning of the termination case, AB stated that his mother and sister could provide the necessary care for his child. AB also testified that he had planned to take care of his child and once released would obtain employment to take care of his child financially. AB intended to get a house and make sure the child had transportation back and forth to school, dental appointments, and doctor's appointments. In response to AB's request to be placed on a treatment plan, the trial court stated that AB could participate in whatever services were offered at his facility, but he was not ordered to participate in any services. And, although a treatment plan was never put into effect, AB was in contact with the DHHS worker about a service plan and was on the waiting list for classes and programs.

Petitioner argues that it is not required to provide reunification services when termination of parental rights is the agency's goal. *HRC*, 286 Mich App at 463. However, in this case, DHHS did not request termination of AB's parental rights based on an aggravated circumstance created by AB, nor is there any evidence that any of the aggravating circumstances set forth in MCL 712A.19a(2) or MCL 722.638(1) exist in this case. Accordingly, petitioner was required to make reasonable efforts in this case. *Mason*, 486 Mich at 152.

It is undisputed that despite DHHS's lack of efforts, AB made repeated requests and efforts to obtain whatever services were necessary to demonstrate his ability and desire to provide proper care and custody for his child. However, petitioner did not make a reasonable effort at reunification. The record does not suggest that DHHS considered a temporary guardianship with any relative in lieu of termination. Rather, petitioner simply dismissed AB's claims that his mother would assist by focusing on the fact that she did not attend the trial court hearings for several months. Even after being presented with both AB's and the paternal grandmother's testimony that proper care and custody was available for AIDB during AB's incarceration, petitioner's efforts still did not include consideration of a guardianship or placement with one of AB's willing relatives. Accordingly, the trial court clearly erred by failing to recognize that DHHS's efforts were indeed insufficient to support termination.

Additionally, we conclude that, even if reasonable reunification efforts were not required in this case, the trial court erred by finding clear and convincing evidence to terminate AB's parental rights.[7] Again, the court terminated AB's parental rights under MCL 712A.19b(3)(g), (h), and (j). The trial court found that that those statutory grounds were established based on AB's "criminality, incarceration, and failure to provide care and custody." However, this Court has previously held that a parent's present or past inability to provide care because of incarceration is not decisive. *Mason*, 486 Mich at 165. Rather, the trial court must evaluate "whether respondent could care for his children in the future, either personally or through his relatives." *Id.* Here, before terminating AB's parental rights, the trial court wholly failed to consider whether AB could provide that care through his mother, nor is there any indication that DHHS made any efforts to determine whether such a placement would be appropriate.

Furthermore, this Court has established that incarceration alone does not justify termination under MCL 712A.19b(3)(j); rather, the court must consider the likelihood of harm if the child was returned to the parent's home after the parent's release. *In re Pops*, 315 Mich App 590, 600; 890 NW2d 902 (2016). The trial court cannot merely assume that the child is at risk in his or her parent's care. *Rood*, 483 Mich at 115. Here, the trial court appeared to suggest that the child was at risk solely because, as a result of AB's incarceration, the child resided with respondent-mother and KS. However, there was no evidence that any such risk would remain after AB's release, and, arguably, that risk would *not* remain following the trial court's termination of respondent-mother's parental rights.

Moreover, "just as incarceration alone does not constitute grounds for termination, a criminal history alone does not justify termination." *Mason*, 486 Mich at 165. AB's criminal history did not involve harm to minors, and no evidence was presented that his criminality would present a risk to his child either presently or in the future. Consequently, AB's "criminality" was an insufficient basis to establish statutory grounds for termination of his parental rights.

Finally, although there was no guarantee that AB would be eligible for parole on his earliest release date, January 5, 2019, there was no clear or convincing evidence presented that he would not. Given that AB attempted to provide care by placing his child with a relative and given that his earliest release date was fewer than two years away, we are left with a definite and firm conviction that the trial court clearly erred by finding that termination was proper under MCL 712A.19b(3)(g), (h), and (j).

Having so determined, we decline to address AB's additional argument that termination of his parental rights was not in AIDB's best interests. Instead, we vacate the trial court's order terminating AB's parental rights and remand to the trial court for further proceedings.

---

[7] Petitioner contends that on appeal AB did not challenge the court's findings that there were statutory grounds for termination. Yet, under MCR 7.216(A)(7), we have the authority to "enter any judgment or order or grant further or different relief as the case may require." Accordingly, we will review this issue.

## IV. BEST INTERESTS

### A. STANDARD OF REVIEW

We review the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

### B. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Id*. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90. "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *Frey*, 297 Mich App at 248-249.

### 1. DOCKET NO. 342833

KS argues that the trial court erred by finding that termination of his parental rights was in the children's best interests because he had no history of abusive behavior towards others, he is hardworking, and he is responsible. KS also contends that he had no prior contact with Child Protective Services (CPS). However, although KS had no substantiated cases with CPS, the petition indicates that KS had been previously investigated by CPS for physical abuse of another woman and her children; therefore, his claim that there was no prior contact is not necessarily accurate. Furthermore, while his ability to support his family could impact the court's consideration of KS's parenting ability, other than KS's own testimony that he worked to maintain the family, there is nothing in the record to corroborate that he was hardworking and responsible. Finally, to the extent that the record does establish that KS was actively involved in the care of his children, the evidence also supports a finding that KS's care may have played a significant role in PES's injuries, which weighs negatively against KS.

KS also asserts that he had a long history of being a loving, safe father to KMS and KSMS, that KMS and KSMS enjoyed a strong bond with him, and he provided permanency and stability for them in addition to their material and emotional needs. However, among a "wide variety of factors," the strength of the bond between the child and the parent is only one factor for the court to consider. See *White*, 303 Mich App at 714. KS stated that he loved PES and had a special bond with him; however, that bond was clearly insufficient to prevent KS's abuse of PES, and there is no indication that a strong bond would be sufficient to prevent harm to KSMS and KMS.

KS argues that the children are already in the primary care of their non-respondent mother and that termination is therefore not necessary. However, it is permissible to terminate the rights of a parent while the children are safely living elsewhere. See *In Re Medina*, 317 Mich App 219, 233-235; 894 NW2d 653 (2016). Indeed, whenever the state is concerned that a parent should not be entrusted with the care and custody of his or her children, "the state has the authority—and the responsibility—to protect the children's safety and well-being . . . ." *In re Sanders,* 495 Mich 394, 421-422; 852 NW2d 524 (2014). Thus, the fact that the children were safely living with their mother does not detract from the danger KS would pose if they were returned to his care.

The trial court also properly considered the clinic's recommendation that the children's best interests did not include reunification with KS. The use of experts in family care and psychology is well established in termination of parental rights cases. See *In re Zelzack*, 180 Mich App 117, 127; 446 NW2d 588 (1989). Psychological evaluations of a parent are relevant and probative of the person's future ability to parent. *In re Johnson*, 142 Mich App 764, 766; 371 NW2d 446 (1985). According to the clinician, KS's failure to obtain medical attention following PES's first fall indicated his "poor judgment and decision making skills." Further, the clinician noted that KS's frustration and impulsiveness may have contributed to his actions on March 14, 2017. Accordingly, the trial court did not clearly err by finding that termination of KS's parental rights was in the children's best interests.

## 2. DOCKET NO. 342837

Respondent-mother argues that the trial court erred by finding that termination of her parental rights was in the children's best interests because she successfully raised them for four years and the children were extremely bonded to her. Again, however, the strength of the bond between the child and the parent is only one factor for the court to consider. *White*, 303 Mich App at 714. Here, the parent-child bond was insufficient to protect PES from harm, so it is reasonable to infer that respondent-mother's bond to her older children would be sufficient to protect them from harm. This is particularly true given that respondent-mother denied any potential risk to her children from her continued relationship with KS. During the pendency of the proceedings, respondent-mother did not show an appreciation for KS's role in PES's injuries. The clinician found that her failure to internalize the potential that KS abused PES reflected a poor prognosis for reunification. The clinician also noted that respondent-mother was "immature" and gave impulsive responses that reflected that she lacked "the appropriate understanding, judgment and insight regarding the severity and importance of proper safety or need to protect."

Respondent-mother argues that her successful parenting-time visits weigh against termination. Respondent-mother's parenting time with AIDB and JMM was successful and appropriate; however, at the time of termination, it was clear that PES suffered significant unexplained injuries. The foster care worker stated that although respondent-mother could benefit from some services, there were no services to address respondent-mother's failure to take responsibility for PES's injuries. Although the trial court could not determine whether respondent-mother contributed to the injuries, it could reasonably conclude that she either caused the injuries or failed to protect PES from injuries. *In re Ellis*, 294 Mich App 30. This finding,

coupled with PES's unexplained injuries, supports the trial court's conclusion that termination of respondent-mother's parental rights was in the children's best interests.

Respondent-mother next asserts that the children's placement with relatives weighs against termination of her parental rights and that guardianship could be considered as an alternative to termination. Yet, the trial court recognized and discussed the children's placement with relatives and found that the children's need for finality and stability outweighed the parents' desire to maintain custody of their children. Further, the fact that the children were bonded with each other does not support a finding that the children should be returned to her care, especially when considering that, although the children were living apart, they were still able to visit together.

Respondent-mother also contends that the trial court erred because the record does not indicate whether PES died from his injuries or any other possible cause. But the reason for PES's death is not dispositive. The trial court found that KS and respondent-mother were "hiding the truth as to the abuse and neglect" that occurred to PES. The court also found that the parents "demonstrated that they are dishonest and unfit to parent their children. And it is unlikely that they will become fit in any reasonable period of time." MCR 2.613(C) states that regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. Accordingly, giving deference to the trial court's determination about respondent-mother's credibility, we affirm the trial court's finding that termination of respondent-mother's parental rights was in the children's best interests.

## V. CONCLUSION

For the reasons stated above, we affirm the trial court's termination of KS's and respondent-mother's parental rights in Docket Nos. 342833 and 342837. However, we vacate the trial court's order terminating AB's parental rights in Docket No. 342835 and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey