# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JACKSON/JENKINS/JONES, Minors.

UNPUBLISHED
December 20, 2018

Nos. 343224; 344259
Wayne Circuit Court
Family Division
LC No. 17-002093-NA

Before: STEPHENS, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

In Docket No. 343224, respondent-father appeals as of right the order terminating his parental rights to the minor children, BLJ, CLJ,[1] DAJ, JAMJ, SLMJ, and SAJ, under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury or physical or sexual abuse of the children), (b)(*ii*) (parent failed to prevent abuse), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that children will be harmed if returned to parent).

In Docket No. 344259, respondent-mother appeals as of right the order terminating her parental rights to her minor children, BLJ, CLJ, DAJ, JAMJ, SLMJ, and SAJ, under MCL 712A.19b(3)(b)(*ii*) (parent failed to prevent abuse), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that children will be harmed if returned to parent).

We affirm the termination of respondents' parental rights in both appeals. However, in Docket No. 343224, we remand for the ministerial task of amending the order of termination to remove reference to child CLJ.

## I. RESPONDENT-FATHER'S NO-CONTEST PLEA

Respondent-father argues that he is entitled to withdraw his no-contest plea regarding best interests because his plea was not voluntarily and knowingly made and because he was denied the effective assistance of counsel. We disagree.

---

[1] As referenced herein, CLJ should not have been listed in the order pertaining to respondent-father.

-1-

As a preliminary matter, the lawyer guardian ad-litem (LGAL) challenged this Court's jurisdiction in his brief on appeal, arguing that respondent-father is not an aggrieved party for the purposes of MCR 7.302(A). See MCR 7.203(A) ("The court has jurisdiction of an appeal of right filed by an aggrieved party . . . ."). We note that even when criminal appeals from plea-based convictions were by right and subject to the "aggrieved party" analysis of MCR 7.203(A), defendants, who had pleaded guilty, were still permitted to argue on appeal that their pleas were defective. See, e.g., *People v Thew*, 201 Mich App 78; 506 NW2d 547 (1993). Moreover, in a civil context, a party will not be bound to a consent judgment if it is clear that the litigant did not intend to consent to the decision. *Ahrenberg Mech Contracting, Inc v Howlett*, 451 Mich 74; 545 NW2d 4 (1996). Here, respondent-father attempted to revoke his plea by filing a motion to remand and now argues on appeal that his plea was defective due to lack of consent to the termination of his parental rights. Therefore, we hold that respondent-father is an aggrieved party for the purposes of MCR 7.203(A).

A respondent-parent must move to withdraw a plea in the trial court in order to preserve the issue for appellate review. *In re Zelzack*, 180 Mich App 117, 126; 446 NW2d 588 (1989). Respondent-father failed to timely seek to withdraw his no-contest plea or challenge the voluntariness of his plea before the trial court, and therefore, the issue is unpreserved for appellate review. This Court reviews unpreserved claims of error for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

A respondent-parent "may make a plea of admission or of no contest to the original allegations in the petition" or to the allegations contained in an amended petition. MCR 3.971(A). However, the trial "court shall not accept a plea of admission or of no contest without satisfying itself that the plea is knowingly, understandingly and voluntarily made." MCR 3.971(C)(1). Prior to accepting a plea of admission or no-contest plea, the trial court must advise the respondent-parent of the allegations contained in the petition, the right to an attorney, that the respondent-parent will waive certain rights if the plea is accepted, and the consequences of the plea. MCR 3.971(B).

The trial court complied with every aspect of MCR 3.971 prior to terminating respondent-father's parental rights. The trial court advised respondent-father that, by pleading no contest, he would waive his rights to a trial, to call witnesses, to testify, and that his plea would be treated as if he admitted the allegations contained in the petition. The trial court also asked whether respondent-father understood that he was pleading to jurisdiction and statutory grounds, and was not objecting to the trial court's finding "that it is in the best interests of the [minor] children to terminate [his] parental rights," to which respondent-father answered in the affirmative. Respondent-father acknowledged his rights five separate times. Moreover, the trial court expressly found that respondent-father's no-contest plea was freely and voluntarily made. Simply put, there is nothing in the record to indicate that respondent-father did not knowingly and voluntarily enter a no-contest plea. Therefore, the trial court did not err by accepting respondent-father's no-contest plea. Because respondent fails to demonstrate plain error, reversal is not warranted.

Respondent also argues that he was denied the effective assistance of counsel because his counsel allowed him to enter a no-contest plea with regard to best interests and failed to discover evidence that would have helped his case. We disagree.

-2-

To preserve a claim of ineffective assistance of counsel, the issue must be raised in a motion in the trial court for a new trial or an evidentiary hearing. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Respondent-father did not move for a new trial or evidentiary hearing below, but rather, raised the issue for the first time on appeal. Therefore, the issue is not preserved for appellate review. As such, our review is limited to errors apparent on the record. *In re Kabanuk*, 295 Mich App 252, 261; 813 NW2d 348 (2012); *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). Whether effective assistance of counsel has been denied is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews questions of constitutional law de novo, and factual findings, if any, are reviewed for clear error. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

The Due Process Clause of the United States Constitution guarantees the right to counsel in parental rights termination cases. *In re Williams*, 286 Mich App 253, 275; 779 NW2d 286 (2009). Generally, to establish a claim of ineffective assistance of counsel, the respondent-parent must demonstrate that counsel's performance was deficient in that it fell below an objective standard of professional reasonableness and that there is a reasonable probability that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. See *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). There is a strong presumption that counsel's decisions constitute sound trial strategy. *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017). Counsel is presumed to be effective, and the respondent-parent bears a heavy burden to demonstrate otherwise. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). When a respondent-parent claims that he was denied the effective assistance of counsel during a plea process, the relevant inquiry is whether the plea was knowingly and voluntarily entered into. *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001). The focus is on whether counsel's advice was within the range of competence. *Thew*, 201 Mich App at 89-90.

As discussed, respondent-father's no-contest plea was knowingly and voluntarily entered into and the trial court accepted the plea in conformance with the court rules. Thus, a challenge to the voluntariness of respondent-father's plea would have been meritless, and counsel is not required to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Accordingly, respondent-father cannot succeed on his claim of ineffective assistance.

## II. REASONABLE EFFORTS FOR REUNIFICATION

Respondent-mother argues that the trial court erred by terminating her parental rights when petitioner failed to make reasonable efforts to reunite her with the minor children. We disagree.

Generally, an issue is properly preserved if it has been "raised, addressed, and decided by the trial court." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent-mother did not argue below that petitioner failed to make reasonable efforts to reunify her with the minor children prior to the termination of her parental rights. Therefore, the issue is unpreserved and our review is limited to one for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App at 135.

Petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). However, reasonable efforts to reunify the child and the family are not mandated in cases involving certain enumerated aggravated circumstances. MCL 712A.19a(2).[2] An aggravated circumstance exists if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 712A.19a(2)(a). MCL 722.638(2), in turn, provides:

> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is *suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk*, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b. [Emphasis added.]

Respondent-mother placed all of the minor children at an "unreasonable risk of harm" by continuing to live with respondent-father even though she knew that respondent-father sexually abused SLMJ. According to SLMJ, respondent-father kissed her, performed oral sex on her, and had vaginal intercourse with her. While respondent-mother claims that she was unaware of the sexual abuse, SLMJ disclosed that respondent-mother witnessed respondent-father sexually abusing her. Respondent-mother did not inform the police. Respondent-mother did not move out of the home or demand that respondent-father leave. Respondent-mother did not take any steps to protect the minor children from respondent-father. In fact, respondents were still living together throughout the termination proceedings. Despite substantial evidence of respondent-father's sexual abuse, respondent-mother maintained that a friend who lived in the home was responsible.

There also was substantial evidence that respondent-father sexually and physically abused CLJ. While there is no evidence that respondent-mother was aware that respondent-father sexually or physically abused CLJ, MCL 722.638(2) only requires that petitioner *suspect* a parent of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to eliminate the risk. Although the trial court did not make an express reference to MCL 712A.19a(2)(a), the court stated that the minor children "were in constant danger of physical abuse and constant danger of sexual abuse" and that "[t]he necessity for termination . . . is paramount," implicitly finding that the aggravating circumstances in MCL 712A.19a(2)(a) were indeed satisfied. Therefore, respondent-mother has failed to show plain error.

---

[2] Effective June 12, 2018, MCL 712A.19a was amended by the Legislature to add a provision stating that involuntary termination of a respondent's parental rights in a prior case is only an aggravated circumstance if the conditions leading to that termination have not been rectified. See 2018 PA 58.

## III. BEST INTERESTS

Both respondents argue that the trial court clearly erred by finding that the termination of their parental rights is in the best interests of the minor children. We disagree.

This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016); see also MCR 3.977(K). A finding is clearly erroneous if this Court is left with a "definite and firm conviction that a mistake has been made." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Additionally, this Court must defer to the trial court's "special ability" to evaluate the credibility of witnesses. *Id.*

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5) and *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The best-interests analysis focuses on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). To determine whether the termination of a parent's rights is in the child's best interests, the trial court should weigh all of the available evidence, *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), and consider the entire record, including any evidence introduced by any party, *In re Medina*, 317 Mich App at 237. Factors that the trial court may consider in making this determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted).

### A. RESPONDENT-FATHER

Respondent-father waived any claim that the trial court clearly erred in finding that termination of his parental rights is in the best interests of the minor children because the trial court's finding was based on respondent-father's knowing and voluntary no-contest plea, in which he affirmatively acknowledged that he was not contesting the trial court's "finding that it is in the best interests of the [minor] children to terminate parental rights." See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) (declining to address the respondent-mother's argument on appeal that the trial court clearly erred in terminating her parental rights because the respondent-mother's argument "that the evidence to support termination was not clear and convincing" directly contradicted her no-contest plea). A respondent-parent "may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit her to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; see also *Carter*, 462 Mich at 215 (" 'One who waives his rights under a rule may not then seek appellate review of the claimed deprivation of those rights, for his waiver has extinguished any error.' " (citation omitted)).

Even if respondent-father had not waived his claim that the trial court clearly erred in terminating his parental rights, the record fully supports the trial court's finding. The evidence shows that respondent-father sexually and physically abused SLMJ and CLJ on multiple

occasions. According to SLMJ, respondent-father kissed her, performed oral sex on her, and had vaginal intercourse with her until she was in pain and bleeding. CLJ also disclosed that respondent-father touched him on his private parts and performed oral sex on him. Given that respondent-father sexually abused both male and female children, it is reasonable to conclude that respondent-father would abuse the other minor children if returned to his care. See *In re LaFrance*, 306 Mich App at 730.

In addition to the physical sexual abusing of his children already discussed, respondent-father also committed non-sexual physical abuse of the minor children as well. CLJ disclosed that respondent-father held a gun to his head on multiple occasions and beat him until he bled. According to the Child Protective Services Investigation Report, respondent-father is verbally abusive to all of the minor children. Respondent-father threatened CLJ that he would shoot him and all of the minor children except for DAJ. Although BLJ was only three years old at the time of the termination proceedings, he said that he did not feel safe at home and did not want to go back with respondents. DAJ also indicated that he did not want to continue living with respondents and liked living with his maternal grandmother.

Although the trial court did not make an express finding that it is in the best interests of each individual child to terminate respondent-father's parental rights, all of the minor children are similarly situated. It is apparent that respondent-father abused all of the minor children, both boy and girl, in similar ways—through various forms of violence. Even if respondent-father did not abuse all of the minor children, each child will suffer trauma for the rest of his or her life after living in such a toxic home. There is ample evidence that respondent-father abused the minor children, endangered the minor children on multiple occasions, and is unable to provide the minor children with a safe and stable environment. Therefore, the trial court did not clearly err in finding that termination of respondent-father's parental rights was in the best interests of the children.

## B. RESPONDENT-MOTHER

As already discussed, the trial court found that CLJ and SLMJ were victims of sexual abuse and that respondent-mother failed to protect the minor children from extreme abuse and danger by failing to inform the police of respondent-father's physical abuse, both sexual and non-sexual, and by failing to remove the minor children from the home where respondent-father lived. Respondent-mother failed to take any steps to protect the minor children from respondent-father despite knowing that respondent-father abused SLMJ. Thus, it was reasonable for the trial court to find that the minor children "would be in immediate, constant[,] and consistent harm" if the minor children were returned to respondent-mother's care.

The trial court also relied on the testimony of Cheryl Carter, Kamisha Brady, and Qiana Sanders, who all spent considerable time with respondent-mother and the minor children and concluded that termination was appropriate. Carter testified that SLMJ and CLJ disclosed that respondent-father sexually abused them, and that respondent-mother refused to believe that respondent-father was responsible for the abuse. Brady also testified that she believed that termination is in the best interests of the minor children because respondent-mother failed to protect the minor children from respondent-father. Although Sanders testified that respondent-

mother and the minor children have a bond, she ultimately agreed with Brady's and Carter's recommendations that termination was appropriate.

In addition to respondent-mother's failure to protect the minor children, the trial court considered the adoptability of the minor children. With the exception of CLJ, who was placed with his legal father—who is not respondent-father—the minor children were living with their maternal grandmother, who expressed her desire to adopt the minor children and provide them with long-term placement. Given the young ages of the minor children, it is critical that the minor children have a safe and stable home that is free from sexual and physical abuse. The record demonstrates that respondent-mother is unable to provide such a home. Although respondent-mother has housing, that factor does not outweigh the fact that she failed to protect her children from pervasive sexual and physical abuse at the hands of respondent-father.

Moreover, the trial court did consider each child individually and determined that its findings of fact with respect to CLJ and SLMJ were relevant for the remaining minor children. All of the minor children were under the age of seven and have experienced trauma that will impact each of them for the rest of his or her life. Respondent-father also sexually abused both male and female children. Therefore, the interests and needs of the minor children were similar enough for the trial court to determine that its findings of facts were applicable to all of the minor children. See *id*. Accordingly, the trial court did not clearly err in finding that the termination of respondent-mother's parental rights was in the best interests of the minor children.

## IV. RESPONDENT-FATHER'S ORDER OF TERMINATION

We note that in Docket No. 343224, the order terminating respondent-father's parental rights, it lists child CLJ. This is incorrect, as respondent-father was not the legal father of CLJ; hence there were no parental rights to terminate with respect to CLJ. Accordingly, we remand for the trial court to perform the ministerial task of amending the order pertaining to respondent-father by removing CLJ's name.

We affirm the termination of respondents' parental rights to their respective children. However, because the order related to respondent-father lists a child that is not his, we remand for the correction of that order. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel