*In re* ZELZACK

Docket No. 113320. Submitted July 13, 1989, at Lansing. Decided
     September 5, 1989.

On September 3, 1987, the Department of Social Services filed a
     petition in the Alpena County Probate Court alleging neglect of
     the child of Robert and Barbara Zelzack. The respondents pled
     no contest to the neglect petition and entered into a service
     agreement with DSS which provided for psychological and sub-
     stance abuse assessment to be used by the court, attendance at
     parenting classes, and visits with the child, with DSS agreeing to
     return the child to the respondents if they complied. In March
     of 1988, DSS petitioned to terminate the respondents' parental
     rights. Robert Zelzack moved for custody based on the service
     agreement and objected to the court's use of the testimony of
     his psychologist. A hearing was held, the psychologist testified
     and the court, Douglas A. Pugh, J., dismissed the petition as
     premature. The court then allowed DSS to be released from the
     service agreement. Dss again filed a termination petition and,
     following a hearing in October, 1988, the court denied Robert
     Zelzack's motion to withdraw his no contest plea and termi-
     nated his parental rights. He appealed.

The Court of Appeals *held:*

     1. The statute providing for the termination of parental
     rights of parents unable to provide proper care because of
     mental illness or deficiency requires only that the mental
     illness or deficiency preclude proper care of the child for a
     period of two years without likelihood of improvement in the
     future. It does not require that such a period must elapse
     before termination can be effected.

     2. The court did not err in refusing to allow appellant to
     withdraw his plea. Dss was released from performing its part of
     the service agreement by appellant's failure to perform his part

REFERENCES

Am Jur 2d, Juvenile Courts and Delinquent and Dependent Chil-
     dren §§ 34 *et seq.*; Parent and Child §§ 34, 35.
Validity of state statute providing for termination of parental
     rights. 22 ALR4th 774.

of the agreement, as well as by the knowledge that DSS obtained relating to appellant's mental condition. Nor was he in fact innocent.

3. Appellant waived the psychologist-patient privilege when he signed the service agreement, the purpose of which was to help him become a better parent. The psychologist's testimony was used by the court to determine appellant's progress and ability to act as a parent, the very purpose for which the waiver was made. The subsequent release of DSS from the agreement did not affect the validity or continued effect of the waiver.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — MENTAL ILLNESS OR DEFICIENCY.

The statute providing for the termination of parental rights of parents unable to provide proper care because of mental illness or deficiency requires only that the mental illness or deficiency preclude proper care of the child for a period of two years without likelihood of improvement in the near future; it does not require that such a period must elapse before termination can be effected (MCL 712A.19a[c]; MSA 21.3178[598.19a][c]).

2. CRIMINAL LAW — INFANTS — JUVENILE COURTS — DUE PROCESS.

Proceedings in juvenile court need not conform with all the requirements of a criminal trial but essential requirements of due process and fair treatment must be met.

*Isackson, Wallace & LaCross, P.C.* (by *Thomas J. LaCross*), Guardian Ad Litem, for Lou Ann Zelzack.

*Carl C. Silver,* for respondent Robert Zelzack.

Before: SHEPHERD, P.J., and BEASLEY and GRIBBS, JJ.

SHEPHERD, P.J. Respondent Robert Zelzack appeals as of right from the November 9, 1988, probate court order terminating his parental rights to his minor child, Lou Ann Zelzack, born January 7, 1986. Respondent mother, Barbara Zelzack, voluntarily requested that her parental

rights be terminated and she has not appealed the termination order.

This appeal involves the effect to be given to a service agreement, entered into by the parties, when determining respondent's rights to withdraw his no contest plea and his waiver of the psychologist-patient privilege.

The Department of Social Services was contacted shortly after Lou Ann's birth by the hospital where Lou Ann had been born. Both Robert and Barbara have IQ's falling within the borderline retarded range and neither of them had knowledge of how to care for an infant. After Lou Ann was brought home from the hospital, DSS provided extensive assistance to the Zelzacks in caring for Lou Ann. Parent-aides, public health nurses, case workers and members of DSS's multidisciplinary team all provided assistance to the Zelzacks. Even while receiving this assistance the Zelzacks were unable to interact and play with their daughter, did not properly feed her, and often left her alone in her room, ignoring her cries. Lou Ann developed a series of ear infections for which her mother did not seek immediate medical attention. When medical attention was eventually sought, Lou Ann was not given her medicine on a regular basis and follow-up medical appointments were not kept even though Lou Ann's illness continued.

In July of 1987 Robert Zelzack was put in jail for an undisclosed offense. When Robert had lived in the home he frequently drank alcohol and fought with his wife. Lou Ann would frequently bang her head on a wall or her crib when her parents fought.

Lou Ann began to exhibit emotional problems and appeared to be developing at a delayed pace both emotionally and intellectually.

DSS filed a neglect petition seeking temporary custody of Lou Ann on September 3, 1987. At a hearing on November 20, 1987, both respondents pled no contest to the neglect petition. In exchange, DSS entered into a service agreement with respondents. At this point Barbara and Robert were separated and seeking a divorce and each of them entered into a separate agreement with DSS.

The service agreements provided that both respondents would submit to psychological and substance abuse assessments and authorized the release to the court of any assessment or progress reports. Additionally, respondents agreed to attend parenting classes, visit Lou Ann weekly, secure clean and safe living accommodations and submit to a complete evaluation by a multi-disciplinary team. The Department of Social Services agreed to assist in arranging services and visitation and to recommend return of Lou Ann to respondents if they complied with the agreements.

In March of 1988 DSS filed a petition for termination of respondents' parental rights on the basis that they were unable to provide proper care for Lou Ann due to mental deficiency or mental illness, MCL 712A.19a(c); MSA 27.3178(598.19a)(c). Respondent father filed a motion for custody of Lou Ann based upon his compliance with the service agreement and filed an objection to the testimony of Dr. Findley on the basis of the psychologist-patient privilege.

A hearing was held in April, 1988. Dr. James Findley, a psychologist, testified that he had evaluated both respondents. Findley found both of them to have IQ levels in the borderline retarded range. Robert Zelzack's personality tests indicated that he has a severe personality disorder and antisocial character traits. It was Dr. Findley's opinion that Robert's ability to parent a small child was ex-

tremely limited. Given Robert's personality disorder, his alcohol abuse and his IQ level, Dr. Findley believes that no amount of treatment would be successful.

Jan Tominello, a social worker, testified that during her contacts with Robert she had observed that he failed to interact and play with Lou Ann and did not feed her regularly. Tominello further testified that Robert had enrolled in a parenting class but was often absent, was frequently intoxicated and disrupted the classes. Testing done on Robert both before and after completion of the parenting course showed that Robert had gained almost no knowledge from the course.

Linda Hall, a counselor at a day treatment program that respondents, via the service agreement, had agreed to participate in, testified that neither one of them had participated in the program.

Evidence was presented that Lou Ann had made significant developmental progress since being placed in foster care.

Robert Zelzack testified that pursuant to the service agreement he had submitted to a substance abuse assessment, Alcoholics Anonymous counseling, mental health assessment, parenting classes, regularly visited Lou Ann and had found an apartment to live in that would accommodate Lou Ann.

The probate court dismissed the termination petition on the basis that it was premature as a statutory review hearing pursuant to MCL 712A.19; MSA 27.3178(598.19) had not yet been held. The court further found that Robert had substantially complied with the service agreement and therefore was entitled to custody of Lou Ann.

Shortly after the decision, DSS moved to be released from the service agreement on the basis that it could not recommend placement of the

child with the father. The motion was granted. Dss also made a motion to reconsider the previous order granting custody to Robert Zelzack.

A hearing on the matter was held in June, 1988. Evidence was presented that Robert had begun drinking again. A priest from a Catholic church testified that in May Robert had come into the church, visibly intoxicated, and had given him a sawed-off shotgun and asked the priest to get rid of it before he shot someone. Criminal charges involving the gun were pending at the time of the hearing.

Patricia Arlt testified that she owns a market near Robert's apartment and that a week earlier Robert, who appeared drunk, attempted to sell her a bag of diapers and some canned goods.

Robert testified that he had arranged for his minister's wife to baby-sit Lou Ann when necessary. Robert admitted that he had resumed drinking due to pressure and that he had refused to submit to an independent psychological examination.

Evidence was presented that Lou Ann had begun increased visitations with her father and she was seeing him twice a week for several hours at a time. As a result Lou Ann began to regress both functionally and emotionally.

The probate court set aside its previous order granting custody to Robert and found that he had not established a fit home for his daughter and had failed to comply with the service agreement.

In July, 1988, dss once again filed a termination petition on the basis of MCL 712A.19a(c); MSA 27.3178(598.19a)(c). In August, 1988, Barbara Zelzack signed an agreement relinquishing her parental rights. Shortly thereafter Robert filed a motion to withdraw his plea to the original neglect petition.

At the final dispositional hearing in October, 1988, Robert Zelzack testified that he had spent one month in an alcohol treatment center and had not had anything to drink since July. Robert admitted that he had been charged with making obscene phone calls to his minister's daughters but denied making such calls.

The probate court denied Robert's motion to withdraw his plea and terminated Robert's parental rights. The court based its decision on Robert's alcohol abuse, criminal episodes, Dr. Findley's diagnosis as to Robert's mental deficiencies and inability to understand and facilitate Lou Ann's needs to grow, learn and develop and the special needs of Lou Ann and her dramatic improvement when removed from her parents' home.

Respondent's first claim on appeal is that the probate court erroneously terminated his parental rights only one year after taking temporary custody of Lou Ann. Respondent's parental rights were terminated pursuant to the then-applicable MCL 712A.19a(c); MSA 27.3178(598.19a)(c) which provided that:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
> \* \* \*
>
> (c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.

We recognize that a conflict exists between panels of this Court concerning whether subsection (c) of the statute requires that two years elapse before parental rights may be terminated. See *In re Youmans,* 156 Mich App 679, 688; 401 NW2d 905 (1986), lv den 428 Mich 871 (1987), and *In re Storms,* 170 Mich App 713, 716; 428 NW2d 751 (1988), conflict noted and consideration of the issue denied, 431 Mich 1207 (1988). We agree with the view expressed in *In re Smebak,* 160 Mich App 122, 127; 408 NW2d 117 (1987), that subsection (c) requires only that the mental deficiency preclude proper care for two years without likelihood of improvement. The two-year period is anticipatory and need not elapse prior to the termination of parental rights. See also *In re Spratt,* 170 Mich App 719, 722-723; 428 NW2d 754 (1988). Accordingly, the probate court did not err when it terminated respondent's parental rights less than two years after Lou Ann was made a temporary ward of the court.

Respondent next asserts that the probate judge erred when he failed to allow respondent to withdraw his no contest plea. Respondent contends that the plea bargain entered into with DSS was illusory and that respondent had not actually committed the offenses to which he had pled no contest.

Respondent pled no contest to the neglect charges on the condition that the probate court would approve the service agreement. The probate judge approved the agreement and accepted the plea. Subsequently, the probate judge allowed DSS to be released from its promise to recommend placement of Lou Ann with respondent if respondent complied with his obligations under the agreement. One week later the probate judge found that respondent had not fulfilled the terms

of the service agreement and therefore was not entitled to custody pursuant to the service agreement. Two months later respondent moved to withdraw his no contest plea due to DSS's failure to keep its part of the plea bargain agreement.

While juvenile court proceedings need not conform to all of the requirements of a criminal proceeding, essential requirements of due process and fair treatment must be met. *In re Campbell,* 170 Mich App 243, 250; 428 NW2d 347 (1988). We therefore apply, by analogy, criminal law and find that the essential requirements of due process and fair treatment were met in this case. Where a defendant's plea is induced by an unkept promise, the remedies are either specific performance or vacating the plea. *People v Cetaways,* 156 Mich App 108, 120; 401 NW2d 327 (1986), lv den 428 Mich 893 (1987). Where a defendant fails to meet a condition of the plea agreement the prosecution's obligations under the agreement cease. *People v Olsen,* 155 Mich App 294, 298; 399 NW2d 66 (1986).

The probate court found that respondent had not complied with the service agreement and therefore was not entitled to withdraw his plea as DSS had no obligation to recommend placement of Lou Ann with respondent. We agree. The record supports the probate judge's conclusion that respondent had not fulfilled the service agreement. Respondent failed to attend, on a regular basis, the parenting classes as agreed to. Indeed, respondent frequently missed the classes or arrived intoxicated. The service agreement also provided for substance abuse treatment which met with little success as evidenced by respondent's frequent episodes of intoxication.

Respondent further asserts that his motion for withdrawal of the plea was based upon a nonfrivo-

lous claim of innocence. There is no absolute right to withdraw a guilty plea once it is accepted. *People v Hale,* 99 Mich App 177, 180; 297 NW2d 609 (1980). A motion to withdraw a guilty plea need not be granted where defendant's stated reasons are obviously frivolous. *Id.* The decision of the trial court on such motions is reviewed for an abuse of discretion. *People v Bentley,* 94 Mich App 19, 21; 287 NW2d 355 (1979), lv den 410 Mich 860 (1980).

Respondent did not argue in the lower court that his plea should be withdrawn because of his innocence. Therefore the probate court never addressed the issue. Having no decision to review we find that the issue was not preserved for appeal. *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 408; 418 NW2d 478 (1988).

Notwithstanding respondent's failure to preserve the issue our review of the record reveals that respondent's claim of innocence is without merit. Dss reports reflected that, prior to the probate court's assumption of jurisdiction, both respondent and his wife ignored Lou Ann's emotional and physical needs. Furthermore, respondent frequently abused alcohol and became violent. During these episodes Lou Ann was ignored and she responded by banging her head against her crib. Shortly before the court took temporary custody respondent was put in jail. Thus, even had respondent preserved this issue he would not have been entitled to withdraw his plea on the basis of his innocence on the neglect charges.

Respondent's final claim of error involves the use of Dr. Findley's testimony as a factor in determining that respondent's parental rights should be terminated. Respondent asserts that Dr. Findley's testimony was inadmissible because it was protected by the psychologist-patient privilege.

MCL 330.1750(2); MSA 14.800(750)(2) provides that communications made to a psychologist or psychiatrist in connection with an examination, diagnosis or treatment of a patient shall not be disclosed in a civil or criminal proceeding unless the patient has waived the privilege.

Respondent waived the psychologist-patient privilege by signing the service agreement. The agreement specifically stated that respondent would submit to psychological assessments and authorized the release of assessment or treatment reports to the probate court.

Respondent contends that his waiver was nullified when the probate court released DSS from its obligation under the service agreement. We disagree with respondent and find that respondent's waiver remained in effect even after DSS was released from the service agreement.

When respondent signed the service agreement he knowingly relinquished his right to control the introduction of his psychological assessments and reports to the probate court. The purpose of the agreement was to help respondent become able to parent Lou Ann and to give the probate court information as to respondent's progress. The testimony and reports of Dr. Findley were used by the probate court to determine respondent's progress and ability to parent Lou Ann. Thus, Dr. Findley's testimony was used for the very purpose for which respondent originally waived his privilege.

Dss was released from the service agreement because it could not recommend return of the child to respondent due, in part, to the assessment made by Dr. Findley. To hold that the release from the agreement would preclude DSS from introducing Dr. Findley's conclusions, when those conclusions had necessitated the release, flies in the face

of logic. Such a conclusion would result in limiting respondent's waiver of the privilege to assessments and reports which recommended the return of Lou Ann to respondent's custody. No such condition appeared in respondent's written waiver and we decline to sanction such a result given the social policy behind the parental rights termination statute. Where the agency, in the proper determination of its statutorily mandated duties, discovers that it cannot fulfill a portion of an agreement, we will not permit doctrines of contract law to defeat the legislative purpose of protecting neglected children. In this case, the agency discovered that respondent was suffering from a mental deficiency that required it to recommend termination of parental rights. At that point, it had no choice but to make such a recommendation to the court even though it had previously agreed to recommend otherwise if respondent honored the terms of his agreement.

For these reasons, we affirm the probate court's decision to terminate respondent's parental rights.