*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. E. WILLIAMS, Minor.

UNPUBLISHED
March 17, 2022

No. 358237
Kalamazoo Circuit Court
Family Division
LC No. 2020-000062-NA

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the trial court order terminating her parental rights to the minor child, AEW, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist and are not likely to be rectified within a reasonable time), (c)(*ii*) (other conditions have not been rectified), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

## I. BACKGROUND

AEW was born in August 2019. In February 2020, the Department of Health and Human Services (DHHS) submitted a petition requesting that the trial court remove AEW from respondent's care. The DHHS alleged that AEW's meconium at birth was positive for methamphetamine, amphetamine, and THC. Further, the DHHS alleged that in December 2020, police raided the home in which respondent and AEW were living. The petition alleged that during the raid, police found methamphetamine, a scale, guns, ammunition, and an improvised explosive device. Respondent and AEW were present during the raid. The petition alleged that respondent endangered AEW by returning to the home despite her knowledge of the "historical criminality" and drug use within the home, and despite attempts by Children's Protective Services "to provide the family with safe and suitable housing." The petition alleged that respondent continued to use methamphetamine and failed to provide a safe and stable home for AEW even though she was

---

[1] The trial court also terminated the parental rights of respondent-father. He is not a party to this appeal.

being offered ongoing case services. The petition further explained that respondent was discharged from Catholic Charities housing because respondent "refused to follow their rules," had marijuana and alcohol in her apartment, and got into a physical altercation with other residents with AEW present. The petition also alleged that respondent went to the YWCA shelter, but was discharged one week later as a result of missing curfew. The petition further stated that respondent also went to Indiana with AEW to stay with a family friend. Indiana Children Services referred respondent to Volunteers of America Behavioral Health Clinic for housing. The petition stated that about a week after arriving in Indiana, respondent returned to Michigan and was found in the home that was raided despite agreeing to the safety plan that she would no longer reside there.

At the February 2020 preliminary examination, respondent stipulated to probable cause. Jasmine Martin-Morris of the DHHS recommended that AEW be placed into a foster-care home. Martin-Morris explained that she had been working with respondent since August 2019 on the basis of substance abuse concerns. Martin-Morris stated that she made efforts to keep respondent and AEW together from August 2019 through the time of the hearing.

At the June 2020 pretrial hearing, prior to respondent pleading to allegations in the petition, the referee first explained:

> If you're going to go ahead today and do a plea, I need to advise you that you would be waiving your right to your trial. If you wanted to have a trial, you could do that. The burden would be on DHHS to prove one or more of the allegations by a preponderance. You would certainly have the right to be represented by your attorney. Your attorney could call witnesses and cross-examine witnesses. A parent could be called to testify because this is a civil proceeding, not criminal. The Court would make sure that subpoenas were done on your trial date to get all the parties and witnesses here. You certainly always have the right to appeal a removal, appeal a disposition and not doing so along the way may challenge, not, may bar your right to challenge the Court's involvement and control at a later date.

The referee also asked respondent if she understood her rights or had any physical, mental, or emotional issue that would affect her ability to enter a plea. Respondent stated that she understood her rights and that she did not have any issues that would prevent her from entering her plea. Respondent stated that she was not under the influence of any substances, that no one threatened her or made any promises in return for her plea, and that it was her choice to plead to some of the allegations. Respondent testified that AEW's meconium after birth tested positive for methamphetamine as a result of respondent's methamphetamine use. The referee found that respondent's plea was knowingly, accurately, understandingly, and voluntarily made and accepted the plea.

At a June 2020 review hearing, Priscilla Cerqueira of the DHHS testified that respondent was working with a parenting coach, and was receiving case management and transportation assistance. Respondent reported being engaged in substance abuse treatment, but she had not signed a release for Cerqueira to see her progress. Cerqueira testified that respondent missed two appointments to complete her psychological and substance abuse evaluation, and because of the no-shows, Cerqueira needed to refer respondent again. Cerqueira testified further that respondent

had not tested negative for substances since drug screenings resumed[2] on June 1, 2020. Respondent had tested positive for methamphetamine, amphetamine, fentanyl, and THC and no-showed nine times in June 2020. Cerqueira stated that it was most important for respondent to participate in more drug screens and test negative. Cerqueira testified that she contacted respondent on a weekly basis and that she and respondent were able to communicate about any issues that respondent had. Respondent stated that she did not have any questions about what Cerqueira wanted her to do, and respondent thought that she could do it. Respondent stated that she understood that she needed to test negative for substances. The prosecution asked respondent if she thought that there was anything Cerqueira could do for her that Cerqueira was not doing, and respondent said, "No."

At the November 2020 review hearing, Kate Davey of the DHHS reported that respondent was inconsistent with parenting times at the beginning of the reporting period, and the supportive visitation program discharged respondent on October 5, 2020, because of her unexcused absences. Davey stated that respondent was attentive and engaged with AEW when she attended parenting time. Davey reported that respondent was scheduled to complete a psychological and substance abuse evaluation in September 2020, but she did not attend. Davey testified that respondent was not engaged in individual counseling. Davey explained that respondent was set up for drug screens, but respondent had not completed a screen since July 2020, and respondent's "last screen was positive for methamphetamine, amphetamine, THC[], benzo, and cocaine." Davey reported that respondent contacted an inpatient treatment program at the end of August 2020 and was accepted into the program. Respondent told Davey that she attended the intake in September 2020, but she left the same day because "she did not want to be locked in a facility and [because] she was sober."

Respondent explained that she left treatment because she did not "like being locked down in a facility," and she admitted that she had used substances since leaving. The referee explained that respondent's next hearing was a permanency planning hearing, at which point the trial court would determine whether to continue the goal as reunification or change the goal to adoption. The referee told respondent that she needed to "pull [herself] together" and decide what her priorities were. The referee advised respondent to return to inpatient treatment and ask staff there to help her find housing.

At the February 2021 permanency planning hearing, Davey testified that respondent completed a psychological and substance abuse evaluation, and a report was generated at the end of November 2020. Davey testified that respondent had been accepted multiple times into an inpatient program. Respondent completed an intake in February 2021, but left approximately one week later, against recommendations and before the program was complete. Davey testified that respondent was not employed. Respondent was signed up for drug screens, but completed few of the screens. Davey explained that respondent last completed screens in December 2020, and respondent was positive for methamphetamine, amphetamine, and THC. Davey testified that

---

[2] Drug screens were not occurring for a period of time due to COVID-19.

respondent was not involved in individual counseling, although Davey had offered to refer respondent for counseling.

Davey testified that there had "been a huge improvement with [respondent] calling and being consistent with parenting times" since the previous court date. Davey reported that respondent was attentive to and engaged with AEW during visits. However, Davey requested that the trial court change the goal from reunification to adoption. Davey thought that respondent had made "minimal" progress, which was not enough progress to keep the goal as reunification. The referee changed the goal to adoption. The referee stated that respondent would have at least three months to show that she could comply with services.

At the May 2021 review hearing, Michaela Pope of the DHHS testified that respondent attended 13 of the last 24 offered visits. Pope explained that one visit ended early because respondent was fighting with respondent-father and that their visits were separate after that. Pope stated that respondent was not consistent with her random drug screens and had only called in for the screens 58% of the time that reporting period. Pope explained that respondent did not complete a drug screen in April 2021 and tested positive for THC in February 2021 and March 2021. Pope stated that respondent understood that the missed screens were presumed positives. Pope testified that respondent was discharged from the parenting coach program because of respondent's no-shows. Pope also testified that respondent reported that she was attending counseling, but only provided Pope with the phone number that day in order for Pope to verify the counseling.

Respondent testified that there was no reason that she could not call in for the drug screens every day, and that she had a vehicle, so transportation was not an issue. The referee told respondent that she was "very pleased" that she was engaged in counseling, but she could not miss a single drug screen before the termination trial. The referee told respondent to put "sticky notes all over [her] car" or set 15 alarms on her phone and to call Pope immediately if respondent had an emergency like a car accident because the trial court would look first at respondent's drug screen history. Respondent stated that she understood.

On June 7, 2021, the DHHS filed a supplemental petition requesting that the trial court terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). The DHHS alleged that the trial court took jurisdiction of the case on approximately June 4, 2020, as a result of respondent's substance abuse and inability to care for AEW. The DHHS explained that respondent missed two scheduled appointments for her psychological and substance abuse evaluation and did not complete them until nine months after AEW had been removed. The DHHS alleged that respondent reported daily methamphetamine use while she was pregnant with AEW. The DHHS alleged that respondent's substance abuse evaluation recommended inpatient drug treatment and drug testing, but respondent did not attend treatment and her attendance for drug screens was "poor." The DHHS alleged further that respondent had tested positive for methamphetamine, amphetamine, and THC during the case and left inpatient treatment before the program was complete. Further, the DHHS alleged that respondent had never completed any substance abuse counseling.

Next, the DHHS alleged that respondent's psychological evaluation recommended that respondent receive counseling, but respondent had not attended or completed counseling. Further, the DHHS alleged that respondent reported domestic violence with respondent-father. The DHHS

explained that respondent and respondent-father fought during a parenting time with AEW, and the caseworker ended the visit. The DHHS asserted that respondent had not addressed her domestic violence issues. The DHHS further alleged that respondent was terminated from a supportive visitation program because of unexcused absences, was often late to parenting times, and had not completed any parenting trainings. The DHHS alleged that respondent was unemployed during most of the case.

At the July 2021 termination trial, Pope testified that, throughout the case, the DHHS had referred respondent to random drug screens, a psychological and substance abuse evaluation, and substance abuse treatment. Pope testified that respondent missed the initial appointments to complete the psychological and substance abuse evaluation, and respondent completed it nine months after AEW was removed. Pope explained that the evaluation found that respondent was at a "high risk for relapse due to her history and admitting of the consistent use of meth." Respondent also admitted to using cocaine, ecstasy, and acid. After completing the evaluation, respondent was referred to complete inpatient and outpatient treatment. Pope explained that respondent missed multiple intake appointments and left inpatient treatment against recommendations. Pope testified that respondent was inconsistent with her drug screens and had tested positive for methamphetamine, amphetamine, and THC since May 2021. Pope stated that respondent had not done anything to successfully address her substance abuse issue.

Pope testified that respondent had been referred to the supportive visitation and parent coach programs, but respondent was unsuccessfully discharged twice because of no-shows. Pope testified that respondent missed most of her visits with AEW when Pope took over as caseworker, but in the two months prior to trial, had "only missed four" out of 16 visits. Pope stated that respondent missed her last visit, scheduled for the day before trial, and did not tell Pope why she missed it. Respondent's counselor reported to Pope that respondent had been discharged due to missing appointments. Pope testified that respondent had not done anything to successfully address her mental health concerns, which included anxiety, depression, attention deficit hyperactivity disorder, suicidal thoughts, and banging her head and hitting herself when frustrated. Pope stated that respondent had reported being involved in rehab prevention for several months, but Pope had not been able to verify it. Pope called the provider and did not receive an answer, so it was possible that respondent was involved in rehab prevention.

Pope explained that respondent and respondent-father had a fight during a visit in March 2021, so they were no longer doing visits together. Pope stated that respondent admitted to domestic violence with respondent-father and that they fought "every day like cats and dogs." Respondent had not completed any domestic violence counseling. Pope testified that respondent had an apartment that was appropriate for AEW. Respondent had not had consistent employment throughout the case and received unemployment income.

Pope testified that AEW had been in a licensed foster home since she was removed in February 2020 and that AEW was "doing very, very well there." AEW was bonded with her placement. Pope testified that AEW's caregiver wanted to provide permanency for AEW if necessary, and the placement had provided everyday care, shoes, clothing, food, and shelter for AEW since February 2020. Pope testified that AEW was also bonded with respondent. However, Pope thought that it was in AEW's best interests to terminate respondent's parental rights because of respondent's lack of progress and because AEW was "thriving" in her placement.

Respondent testified that she had attended a rehab prevention class over Zoom twice a week since March or April 2021. Respondent thought that the program was helpful and that she had made some progress with her addiction. Respondent agreed that she relapsed in May and June 2021. Respondent denied living at the home at which there was the raid in December 2019. Respondent stated that she had a great bond with AEW.

The trial court stated that respondent admitted in June 2020 that she had substance abuse issues and that AEW was born with methamphetamine in her system. The trial court stated that respondent was ordered to complete a psychological and substance abuse evaluation and that it "took [her] a while before [she] did that." The trial court explained that respondent was recommended to complete drug screenings and that respondent's attendance with drugs screens "ha[d] not been good." The trial court explained that respondent continued to use methamphetamine. The trial court stated that respondent's caseworker worked with respondent on treatment, but respondent did not want to participate. The trial court stated that it could not place AEW with respondent when she was using methamphetamine because she was "not capable of parenting" when she was addicted and under the influence of that drug.

The trial court found clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*). The trial court explained that 182 days had passed since the initial dispositional order, that the conditions that led to adjudication continued to exist for respondent, and that there was not a "reasonable likelihood that the conditions would be rectified within a reasonable time considering [AEW]'s young age." The trial court explained that respondent was still using methamphetamine and that it had never heard of the rehab prevention program that she claimed that she was attending, but if she were, she would know that it was important for her to have support and complete drug screens. The trial court stated that respondent was not attending parenting classes, mental health treatment, or substance abuse treatment.

Next, the trial court found clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*ii*). The trial court explained that respondent had mental health concerns and domestic violence issues with respondent-father. The trial court stated that respondent was unable to assess and consider how her behavior affected AEW. The trial court stated that respondent had not been seriously involved in parenting classes and that it would take too long for respondent to participate in the programs she needed. The trial court additionally found that there was a reasonable likelihood that AEW would be harmed if she were returned to respondent, pursuant to MCL 712A.19b(3)(j).

The trial court explained that AEW had been in a stable foster home that provided permanence, love, affection, guidance, discipline, and for all of AEW's needs, including housing, food, and clothing. The trial court stated that what respondent provided was not sufficient. The trial court found that it was in AEW's best interests for respondent's parental rights to be terminated. The trial court terminated respondent's parental rights. Respondent now appeals.

## II. ADVICE OF RIGHTS UNDER MCR 3.971

Respondent argues first that the trial court erred by failing to advise respondent of her appeal rights pursuant to MCR 3.971. We disagree.

This Court reviews de novo whether child protective proceedings complied with procedural due process. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2013). However, this Court reviews for plain error unpreserved claims of constitutional error. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). In order to establish plain error, a party must show that an error occurred, the error was clear or obvious, and the error affected the party's substantial rights. *Id*. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

Child protective proceedings include the adjudicative phase and the dispositional phase. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). In the adjudicative phase, the trial court determines whether to take jurisdiction of a child. *Id*. at 464. A parent may waive his or her right to trial by admitting to or pleading no contest to allegations in the petition. *Id*. " 'Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " *Id*., quoting *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970).

The "essential requirements of due process and fair treatment must be met" in child welfare proceedings. *In re Zelzack*, 180 Mich App 117, 125; 446 NW2d 588 (1989). The Due Process Clause of the Fourteenth Amendment requires that a plea must be voluntary and knowing in order for the plea to constitute an effective waiver of fundamental rights. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019). Due process requires "either a plea hearing that comports with due process and the court rule, or, if respondent choose, a trial." *Id*. at 31.

At the time of respondent's June 4, 2020 plea,[3] MCR 3.971(B) provided:

> (B) Advice or Rights and Possible Disposition. Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:
>
> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;
>
> (3) that, if the court accepts the plea, the respondent will give up the rights to
>
> (a) trial by a judge or trial by a jury,
>
> (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,
>
> (c) have witnesses against the respondent appear and testify under oath at the trial,

---

[3] MCR 3.971 has been amended since respondent's plea.

(d) cross-examine witnesses, and

(e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

(4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

(5) if parental rights are subsequently terminated, the obligation to support the child will continue until a court of competent jurisdiction modifies or terminates the obligation, an order of adoption is entered, or the child is emancipated by operation of law. Failure to provide required notice under this subsection does not affect the obligation imposed by law or otherwise establish a remedy or cause of action on behalf of the parent;

(6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of relevant transcripts; and

(8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from the other terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 3.993(A)(1), 3.993(A)(2), or a delayed appeal under MCR 3.993(C).

Further, MCR 3.971(C) provided that a "respondent may challenge the assumption of jurisdiction in an appeal from the order terminating respondent's parental rights if the court fails to properly advise the respondent of their right to appeal pursuant to subrule (B)(6)-(8)." MCR 3.971(D) provided that a trial court could not accept a plea without ensuring that it was voluntarily and accurately made.

The trial court properly advised respondent at both the preliminary hearing and at the pretrial hearing about her right to appeal. It is, however, true that the trial court failed to specifically advise respondent of her right to a court-appointed attorney in order to appeal the adjudication. MCR 3.971(B)(2) provides that the trial court must advise a respondent "of the right to an attorney, *if respondent is without an attorney*[.]" (Emphasis added). At all times in this case, beginning with the preliminary hearing through the termination trial, respondent was represented by the same attorney. However, MCR 3.971(B)(7) provides that the trial court must specifically advise a respondent of the right to "appointment of an attorney to represent the respondent on any appeal as of right . . . ."

Respondent argues on appeal that "a respondent who already is appointed counsel due to indigency may forgo an appeal mistakenly believing that he or she did not have a right to appeal or either have to appeal *in pro per* or pay an attorney to appeal, effectively chilling their appeal of

right." However, there is no indication that respondent was unable to speak with her attorney about her right to appeal, of which the trial court advised respondent on at least two occasions. There is no reason to believe that respondent would have been more likely to appeal had she thought that she had the right to have two separate court-appointed attorneys. Moreover, respondent has not indicated upon which grounds she would have appealed the trial court's exercise of jurisdiction.

At the pretrial hearing, before respondent pleaded to allegations in the petition, the trial court explicitly advised respondent of each of her rights under MCR 3.971(B)(3), including that she had the right to be represented by her attorney at trial. The trial court also properly advised respondent of her right to appeal and that she might be barred from later challenging the trial court's assumption of jurisdiction if she did not appeal the removal or disposition. The trial court also specifically stated that respondent had the right to appeal a removal and a disposition. See MCR 3.971(B)(6), (8). Further, the trial court asked appropriate questions to determine that respondent's plea was voluntarily and knowingly made. See MCR 3.971(D). Likewise, at the preliminary examination, during which respondent was represented, the trial court advised respondent of her rights under MCR 3.971(B)(3) and of her right to appeal.

This Court has previously explained that the rights that MCR 3.971(B)(3) provides "are particularly important because they directly relate to the adjudicative stage of the child-protective proceeding," which "is a critical stage in the proceeding because if the trial court exercises jurisdiction, then the parent will be unable to control the care and custody of his or her child." *In re Pederson*, 331 Mich App at 466-467. However, in *In re Pederson*, 331 Mich App at 469-470, this Court held that the trial court's failure to advise the respondent of all the rights under MCR 3.971(B)(4) did not warrant reversal because the failure did not "taint" the adjudicative stage of the proceedings, in comparison to the Michigan Supreme Court's decision in *In re Ferranti*, 504 Mich at 12, in which the Court reversed an adjudication when the trial court did not advise the respondent of the rights under MCR 3.971(B)(3). Likewise, the trial court's failure in this case did not taint the adjudicative stage of the proceedings.

Further, this Court held in *In re Pederson*, 331 Mich App at 466, that the trial court erred when it failed to advise the respondent of all of their rights under MCR 3.971, but that the respondent failed to show that the error was outcome-determinative. Similar to *In re Pederson*, the trial court here advised respondent of most of her rights, including the right to appeal the trial court's orders, and respondent had a court-appointed attorney at all times during the case. There is no indication that respondent's plea was not knowingly and voluntarily made or that the trial court's advice of rights affected the adjudicative or dispositional stage of the proceedings; therefore, respondent has failed to demonstrate prejudice. See *In re Pederson*, 331 Mich App at 470-471. Moreover, even when substantial rights are affected, reversal is not automatic. There was significant evidence supporting the original exercise of jurisdiction; therefore, respondent is not entitled to reversal on the basis of the trial court's explanation of respondent's rights. See *id*. at 471.

## III. RIGHT TO APPEAL REMOVAL

Respondent argues next that the trial court erred by failing to advise her of her right to appeal AEW's removal. We disagree.

MCR 3.965(B)(15) provides that "[i]f the court orders removal of the child from a parent's care or custody, the court shall advise the parent, guardian, or legal custodian of the right to appeal that action." In this case, the referee properly advised respondent during the preliminary examination and the pretrial hearing of her right to appeal the removal. At the preliminary examination, the referee explained that "parents always have the right to appeal a removal, an order of disposition and not doing so could bar their rights later." At the pretrial hearing, before respondent pleaded to allegations in the petition, the referee told respondent that she "certainly always [had] the right to appeal a removal, appeal a disposition and not doing so along the way may challenge, not, may bar your right to challenge the Court's involvement and control at a later date." Respondent stipulated to probable cause during the preliminary examination and pleaded to allegations in the petition during the pretrial hearing. Further, respondent has never provided an argument for why removal was improper.

Although respondent argues that the DHHS should have placed AEW with her maternal grandmother, the DHHS could not immediately place AEW with maternal grandmother because of her roommates' central registry and criminal backgrounds. MCR 3.965(C)(2) provides:

> (2) *Criteria*. The court may order placement of the child into foster care if the court finds all of the following:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

The DHHS was pursuing placement with the maternal grandmother before she moved out of state. The DHHS further pursued the placement while the maternal grandmother was out of state, but she failed to attend the planned meeting. The trial court made all the appropriate findings pursuant to MCR 3.965(C)(2) for removal before ordering a foster-care placement for AEW and properly advised respondent of her right to appeal the removal.

## IV. REASONABLE EFFORTS

Respondent argues last that the trial court erred by finding that the DHHS made reasonable efforts to reunify the family. We disagree.

-10-

"This Court reviews for clear error a trial court's factual findings following a termination hearing," *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015), as well as the trial court's determination that reasonable efforts were made, *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). Clear error exists when this Court is left with a definite and firm conviction that the trial court made a mistake. *In re Gonzales/Martinez*, 310 Mich App at 430-431.

Generally, the DHHS must "make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Smith*, 324 Mich App at 43. The DHHS must create a service plan that outlines the steps that the DHHS and the parent will take to rectify the conditions that led to the petition and to achieve reunification. *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(d). Once the DHHS is aware of a parent's disability, it has an affirmative duty to make accommodations. *Id*. at 87-88. Reasonable efforts may include referrals for services and efforts to engage respondent in services. *In re JL*, 483 Mich 300, 322 n 15; 770 NW2d 853 (2009). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

Although respondent argues that the DHHS did not make reasonable efforts because respondent's psychological evaluation recommended that the DHHS assist her in applying for social security benefits and that respondent engage in outreach counseling to assist with daily tasks, the DHHS worked extensively with respondent and provided a number of services over the course of the case. The DHHS offered services to respondent for approximately six months even before petitioning the trial court to remove AEW from respondent's care. Respondent completed her psychological and substance abuse evaluation on October 23 and October 26, 2020, eight[4] months after AEW's removal and after missing previously scheduled appointments. During that period, however, the DHHS had continued to offer services to respondent, who chose not to participate and continued to test positive for methamphetamine. Throughout the case, the DHHS continued to offer visitations, drug screens, referrals to treatment, parenting instruction, and transportation assistance. However, respondent clearly did not benefit from the minimal services in which she participated, and she had a responsibility to participate in and benefit from services. See *In re Smith*, 324 Mich App at 45-46; *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Further, respondent does not explain how applying for social security benefits would help her stop using methamphetamine, which was the reason for which the trial court originally exercised jurisdiction and ultimately terminated respondent's parental rights. The DHHS attempted on numerous occasions to connect respondent with counseling and substance abuse services, and respondent did not participate, so there is no basis to conclude that social security benefits would have changed respondent's compliance with services or ended her substance abuse issues. Respondent was discharged from the parenting programs because of no-shows, and she completed a minimal number of drug screens, despite having transportation and offers of

---

[4] AEW was removed on February 20, 2020. The psychological and substance abuse evaluation took place on October 23, 2020 and October 26, 2020. The report was dated November 20, 2020. Therefore, the DHHS mistakenly stated that respondent completed the evaluation nine months after AEW was removed, instead of eight months.

transportation assistance.  Respondent left inpatient treatment programs early and did not participate in other treatment programs, and the psychological and substance abuse evaluation had clearly recommended that respondent complete substance abuse treatment and drug screens.

Additionally, respondent testified that she understood what was being asked of her, and the caseworkers testified about meeting and communicating with respondent throughout the case. There was no indication that respondent was unable to participate in services or that the DHHS failed to tailor services to her needs.  Therefore, the trial court did not err by finding that the DHHS made reasonable efforts.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra