*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VANWORMER-BALLINGER/BALLINGER, Minors.

UNPUBLISHED
April 14, 2022

Nos. 358048; 358049
Otsego Circuit Court
Family Division
LC No. 19-000006-NA

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

I.

In these consolidated appeals,[1] respondent-mother and respondent-father appeal as of right the trial court's order terminating their parental rights to their minor children, TVB and LB, pursuant to MCL 712A.19b(3)(c)(*i*) and (g). In their sole issue on appeal, both respondents argue that the order terminating their parental rights should be vacated because their pleas that allowed the trial court to exercise jurisdiction over TVB only, which were entered during the adjudicative phase approximately 2½ years earlier, were invalid. For the reasons set forth below, we affirm.

II.

On appeal, respondents exclusively argue that the order terminating their parental rights should be vacated because pleas, entered during the adjudicative phase approximately 2½ years earlier, were invalid. They contend that their pleas were invalid because the trial court did not properly advise them of the consequences of theirs plea, "including that the plea could later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent." See

---

[1] *In re Vanwormer-Ballinger/Ballinger,* unpublished order of the Court of Appeals, entered August 20, 2021 (Docket Nos. 358048 & 358049).

MCR 3.971(B)(4). With hardly any discussion or argument, respondents state that the irregularities in the plea proceedings affect the validity of their pleas and require reversal of the order terminating their parental rights.[2] Although we agree that the trial court failed to comply fully with the requirements of the court rules, we hold that respondents have not established plain error that affected their subsequent rights.

Preliminarily, although respondents now challenge the validity of their pleas entered during the adjudicative phase approximately 2½ years before the court terminated their parental rights, they never raised any due-process argument in the trial court or otherwise challenged the validity of their pleas or the court's jurisdiction over TVB in an appropriate motion in the trial court. Therefore, their appellate argument is unpreserved. See *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020); *In re Zelzack*, 180 Mich App 117, 126; 446 NW2d 588 (1989).

Because this argument is unpreserved, it is reviewed for plain error affecting respondents' substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008); see also *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (recognizing that unpreserved adjudication errors raised after a trial court has terminated parental rights are reviewed for plain error). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9; see also *Carines*, 460 Mich at 763. Once these three requirements are satisfied, "an appellate court must exercise its discretion in deciding whether to reverse." *Carines*, 460 Mich at 763. Reversal is not warranted if the plain, forfeited error does not seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.* at 763-764.

Respondents contend, in a cursory fashion, that any deviation from the advice of rights identified in MCR 3.971(B) is a ground for automatic reversal. In support of this position, with little to no elaboration, they simply cite to *In re Ferranti*, 504 Mich 1. However, *In re Ferranti* cannot be read that broadly. In that case, when taking the respondents' pleas, the trial court did not advise the respondents that they were waiving any rights, and the trial court did not inform the respondents of the consequence of their pleas. *Id.* at 9. Unlike in this case, the facts in *In re Ferranti* demonstrate a wholesale failure to comply with the requirements of MCR 3.971(B).

---

[2] In their briefs on appeal, respondents confine their arguments to the validity of their pleas at the April 2019 proceedings, which only involved TVB. Respondents do not discuss or even reference the adjudicative proceedings relative to LB, which occurred in 2020. This omission is likely attributable to the lack of any arguable error related to the court's exercise of jurisdiction over LB. Indeed, the court exercised jurisdiction over LB as to respondent-mother after a bench trial, not because of any plea by respondent-mother. Because respondents have confined their arguments to the proceedings involving the petition relative to TVB, we must conclude that they are only challenging the trial court's assumption of jurisdiction over TVB and not contesting the termination of their parental rights to LB.

Thus, the Supreme Court's decision in *In re Ferranti* is inapposite and respondents' reliance on it is misplaced.

This Court's decision in *In re Pederson*, which also involved unpreserved challenges to the validity of the respondents' pleas, is more instructive because it addresses the situation where a trial court fails to fully advise a respondent of the consequences of a plea, MCR 3.971(B)(4), but substantially complies with the requirements of MCR 3.971 in all other respects, particularly MCR 3.971(B)(3). This Court in *In re Pederson* distinguished *In re Ferranti* and its decision makes clear that reversal is not warranted solely because a trial court fails to recite every provision of MCR 3.971. Specifically, the *In re Pederson* Court held that the trial court erred when it failed to properly advise the respondents that their pleas could "later be used as evidence in a proceeding to terminate parental rights." *In re Pederson*, 331 Mich App at 466. However, this Court further concluded, with regard to the prejudice prong of the plain-error test, "that respondents [had] failed to carry their burden of demonstrating that the adjudicatory error at issue" was outcome-determinative. *Id.* This Court's rationale in reaching these conclusions is instructive.

Initially, this Court distinguished *In re Ferranti* by noting that the error warranting reversal in that case resulted from the trial court's failure to advise the respondents of the rights they were waiving *and* the potential consequences of their pleas, thereby violating their right to due process. The Supreme Court concluded that the pleas were not knowing and voluntary. *In re Ferranti*, 504 Mich at 30. This Court noted that in *In re Ferranti* the trial court failed to advise the respondents of "any" of the waived rights enumerated in MCR 3.971(B)(3) and (4). *In re Pederson*, 331 Mich App at 466, citing *In re Ferranti*, 504 Mich at 31. That is, not only did the trial court fail to inform the respondents of the consequences of their plea, it failed to inform them of all the rights that were being waived under MCR 3.971(B)(3).

This Court then explained why the requirements of MCR 3.971(B)(3) are particularly important during the adjudicative phase:

> MCR 3.971(B)(3) lists the rights that a parent waives by virtue of entering a plea, as opposed to requiring petitioner to proceed to trial and prove the allegations contained in the petition by a preponderance of the evidence. MCR 3.972(C)(1). The rights outlined in MCR 3.971(B)(3) are particularly important because they directly relate to the adjudicative stage of the child protective proceeding. The adjudicative stage is a critical stage in the proceeding because if the trial court exercises jurisdiction, then the parent will be unable to control the care and custody of his or her child, *In re Deng*, 314 Mich App 615, 626; 887 NW2d 445 (2016), and will be subjected to "the dispositional authority of the court," MCR 3.903(A)(27). See *In re Sanders*, 495 Mich at 405-406 ("While the adjudicative phase is only the first step in child protective proceedings, it is of critical importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights.") (quotation marks and citation omitted.). In contrast, if the trial court determines that it lacks authority to exercise jurisdiction, the minor child must be returned to the care of his or her parent(s). See MCR 2.514(A). See also MCL 712A.18(1) (providing that the trial court must dismiss the petition if it is found that the petition concerning the child at issue does not fall within the chapter). The importance of the adjudicative stage

-3-

is reflected by the fact that it is the only stage of the proceeding when a parent is entitled to a trial. See also MCR 3.977(A)(3); *In re Sanders*, 495 Mich at 405-406. [*In re Pederson*, 331 Mich App at 466-467.]

Consequently, this Court held that "by failing to advise the respondents of the rights outlined in MCR 3.971(B)(3), the trial court in *In re Ferranti* effectively tainted the adjudicative state of the proceeding." *In re Pederson*, 331 Mich App at 467.

The *In re Pederson* Court then considered circumstances in which a trial court provides accurate advice under MCR 3.971(B)(3), but fails to advise the respondents according to MCR 3.971(B)(4), and why those circumstances differed from those present in *In re Ferranti*:

This case does not feature the numerous errors that occurred in *In re Ferranti*. Respondents in this case only take issue with the fact that the trial court failed to advise them that their pleas could "later be used as evidence in a proceeding to terminate parental rights" as required by MCR 3.971(B)(4). Thus, unlike the parents in *In re Ferranti*, respondents in this case were informed of most of the rights that they were waiving, including their rights to a trial by judge or jury, to have witnesses against them appear, and to subpoena witnesses. Moreover, the transcript of the plea proceeding supports that respondents reviewed the allegations in the petition with their attorney, who represented them at the plea hearing. See MCR 3.971(B)(1) and (2). The record also supports that respondents discussed the allegations contained in the petition with their attorney and considered their decision.

\* \* \*

Each of the allegations that respondents were pleading to were read aloud at the hearing. Thus, respondents were clearly advised of the allegations to which they were pleading. Additionally, and importantly, respondents confirmed that they were entering pleas of their own free will. [*Id.* at 467-469.]

The Court further explained why the sole failure to comply with MCR 3.971(B)(4), as opposed to MCR 3.974(3), did not taint the adjudication:

Furthermore, MCR 3.971(B)(4) relates to the dispositional phase of the proceedings—as opposed to the adjudicative phase—in that (B)(4) does not address the rights associated with an adjudication trial. Rather, MCR 3.971(B)(4) concerns how entering a plea at the adjudication stage could later be used against respondents during the dispositional phase. Thus, unlike in *In re Ferranti*, the adjudicative stage was not tainted by the trial court's failure to advise respondents of their rights under MCR 3.971(B)(4). Rather, respondents were aware that they were giving up the right to an adjudication trial before entering pleas. [*In re Pederson*, 331 Mich App at 469.]

Essentially, this Court concluded that if a respondent is fully informed of the rights that are being waived under MCR 3.971(B)(3), and the only omission is related to the failure to comply with MCR 3.971(B)(4), then a respondent may be unable to demonstrate the requisite prejudice to

-4-

invalidate a plea under plain-error review. This Court's reasoning is based on the observation that a respondent under these circumstances is aware that they are giving up the right to an adjudication trial before entering the plea, and that the adjudicative stage is not tainted by the trial court's failure to advise the respondent of the rights under MCR 3.971(B)(4), a court rule relating to the dispositional phase. *In re Pederson*, 331 Mich App at 469.

The plea proceedings here were slightly unconventional as they unfolded over the course of three hearings in April 2019. Nonetheless, as in *In re Pederson*, the record discloses that respondents were advised of the rights set forth in MCR 3.971(B)(3), and respondents do not challenge the trial court's compliance with MCR 3.971(B)(3). The trial court's only omission, and the only issue raised by respondents, is that it failed to inform respondents that their pleas could be used against them during a later termination hearing.

Our review of the record establishes that on April 9, 2019, the trial court advised respondents consistent with the overwhelming majority of requirements of MCR 3.971(B). Most important to the adjudicative phase, the court fully complied with MCR 3.971(B)(3). Similar to the circumstances in *In re Pederson*, respondents were informed of all of the rights they would be waiving, including the right to a trial by judge or jury, to have witnesses against them appear, and to subpoena witnesses. As in *In re Pederson*, the hearing transcripts confirm that respondents had fully discussed the case with their attorneys and had reviewed the allegations in the petition. Further, respondents confirmed that they were entering the pleas of their own free will. And in doing so, it is readily apparent that respondents understood that they were giving up a right to an adjudication trial before entering their pleas. Applying *In re Pederson*, respondents cannot demonstrate that they were prejudiced by the trial court's failure to advise them that their pleas could be used against them during a subsequent termination hearing.

In any event, the record does not show that the trial court relied on respondent-mother's admission or respondent-father's no-contest plea when terminating their parental rights. Instead, the trial court considered respondents' continued drug use, their pending drug-related criminal matters, and their failure to comply with and benefit from their treatment plans during the 27 months that TVB remained in foster care. The fact that respondent-mother tested positive for drugs on one date in March 2019, or that respondent-father knew that there was cocaine in the home when it was raided in April 2019, had little to no bearing on the trial court's decision to terminate respondents' parental rights in July 2021. Rather, the court relied on the fact that respondents were provided a multitude of services over approximately two years, yet they failed to fully participate in and benefit from a treatment plan. Because the trial court did not rely on the facts established by the pleas to terminate respondents' parental rights more than two years later, the trial court's failure to specifically inform respondents that their pleas could be used as evidence at a subsequent termination hearing "did not affect the outcome of the dispositional phase of the proceedings." *In re Pederson,* 331 Mich App at 470.[3]

---

[3] One final point relative to respondent-mother. Her entire argument is premised on an allegedly invalid plea taken in April 2019. However, she ignores that at the time of the April 2019 events, the trial court had already assumed jurisdiction over TVB relative to respondent-mother.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

Specifically, on February 5, 2019, respondent-mother entered a plea of admission to the original January 22, 2019 petition, after which the court found statutory grounds to exercise jurisdiction over TVB. An order of adjudication was entered on February 5, 2019, and at the February 26, 2019 dispositional hearing, the court ordered respondent-mother to comply with a service plan. At no time has respondent-mother challenged the validity of the court's assumption of jurisdiction on February 5, 2019. Consequently, because the court already had jurisdiction over TVB as to respondent-mother, any irregularities in a plea proceeding related to the April 5, 2019 supplemental petition are irrelevant.