*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. PATTENGILL, Minor.

UNPUBLISHED
May 18, 2023

No. 363173
Shiawassee Circuit Court
Family Division
LC No. 21-014398-NA

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Respondent-mother[1] appeals by right the trial court's order terminating her parental rights to the minor child, AP, at the initial dispositional hearing. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 2020, respondent's parental rights to another child were terminated because of neglect and respondent's failure to benefit from services. During respondent's prior termination case, a psychological evaluation was performed, during which respondent experienced visual and auditory hallucinations. The evaluator concluded respondent had a low IQ score and a cognitive impairment. In addition, the evaluator concluded that respondent was "low in empathy, place[d] a high value on obedience," and experienced "deficits in her insight and judgment" that would impair her parenting abilities. The evaluator recommended that respondent receive ongoing and consistent support for the safety of her child and to have someone help manage her finances.

In December 2021, petitioner, the Department of Health and Human Services (the "Department"), filed a petition to remove AP from respondent's care and terminate respondent's parental rights at the initial dispositional hearing. Before AP was born, respondent was a victim in an Adult Protective Services investigation, during which she was found living in a "shack" for two years in "deplorable home conditions" without electricity or gas. Respondent was 28 weeks

---

[1] AP's legal father, whose paternity was established through marriage, was also a respondent in the proceedings below. The father's parental rights were not terminated during these proceedings.

pregnant with AP when she was found and had not received prenatal care. A Child Protective Services ("CPS") investigation was opened after respondent tested positive for marijuana at the hospital after giving birth to AP, at which time AP's umbilical cord also tested positive for marijuana. At the hospital, respondent did not have any baby supplies. Respondent was subsequently hospitalized after having a mental breakdown and suicidal ideations. At the time the petition was filed, respondent and AP were living with another family who assisted respondent in caring for AP. This family reported that respondent frequently slept with AP, which violated a prior infant safe sleep agreement, and would not wake up when AP cried and would ignore her.

Respondent was also arrested and charged with second-degree criminal sexual conduct for inappropriately touching another individual and was incarcerated while awaiting trial. During respondent's criminal proceeding, respondent was deemed incompetent to stand trial because of her cognitive deficits. Before respondent was incarcerated and during her period of incarceration, the Department provided services to respondent, but she failed to benefit from them. Respondent informed CPS investigators that she received Social Security income because of her cognitive impairments and felt that AP was not safe in her care. Respondent's caseworker believed that there was a reasonable risk of harm to AP if she was returned to respondent's care and that AP was safe in her foster home, which provided her with permanency.

On August 30, 2022, respondent pleaded no contest to the allegations in the petition. Before accepting her plea, the trial court extensively questioned respondent to ensure she understood the ramifications of her plea in light of her cognitive deficits. The court also questioned her attorney regarding her comprehension and understanding of the termination proceedings and the implications of her no-contest plea. Respondent testified that she previously informed her attorney that she wanted to voluntarily relinquish her parental rights. The trial court took jurisdiction over respondent and AP and proceeded with the dispositional and best-interests determinations. The trial court found that statutory grounds for termination were met under MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent) and that it was in AP's best interests to terminate respondent's parental rights. Accordingly, the court entered an order terminating respondent's parental rights to AP. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Generally, the trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion. *In re Zelzack*, 180 Mich App 117, 126; 446 NW2d 588 (1989).[2] Respondent, however, did not move to withdraw her plea and has, therefore, failed to preserve the argument for appeal. *Id.* Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). In order to avoid forfeiture of the argument, respondent must "establish that (1) error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected their substantial rights. And the error must have seriously affected

---

[2] Cases decided before November 1, 1990, are not binding but may be considered for their persuasiveness. *In re JP*, 330 Mich App 1, 14; 944 NW2d 422 (2019).

the fairness, integrity or public reputation of judicial proceedings." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks, citations, and alteration omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Utrera*, 281 Mich App at 9.

## B. DISCUSSION

Respondent argues that her plea was not knowingly, understandingly, and voluntarily made in light of her cognitive impairment. We disagree.

Pleas in termination proceedings are governed by MCR 3.971, which states, in relevant part:

> (B) Advice of Rights and Possible Disposition. Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:

> (1) of the allegations in the petition;

> (2) of the right to an attorney, if respondent is without an attorney;

> (3) that, if the court accepts the plea, the respondent will give up the rights to

> (a) trial by a judge or trial by a jury,

> (b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,

> (c) have witnesses against the respondent appear and testify under oath at the trial,

> (d) cross-examine witnesses, and

> (e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

> (4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

> * * *

> (6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;

-3-

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of transcripts; and

(8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from an order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 7.204 or a delayed appeal under MCR 3.993(C).

MCR 3.971(D)(1) commands that "[t]he court shall not accept a plea of admission or of no contest without satisfying itself that the plea is knowingly, understandingly, and voluntarily made."

There is nothing in the record concerning respondent's no-contest plea to suggest that the trial court plainly erred when it concluded that respondent's plea was knowingly, understandingly, and voluntarily made. Although the record does not contain detailed information about respondent's cognitive impairment, the trial court was aware of it and took additional steps to ensure that her plea was valid. These steps included allowing respondent to interrupt the trial court if she did not understand something and repeatedly asking her if she understood everything, to which respondent replied, "Yes." The following colloquy took place on the record:

> *Trial Court.* Okay. The evidence, allegations in the Petition speak of both developmental disability and mental illness. It is imperative that, therefore, to [sic] take a minute and make sure that what she intends to do is voluntary.
>
> [Respondent], it is very important that you understand what I'm saying. And I—I say that to everybody and it's not because I don't think you're smart enough or I don't think this or that. It's just because this is a foreign environment. They don't teach you this stuff in school. And, so I want you to do something I—I rarely tell people to do and that is go ahead and interrupt me. Just say, wait. Just put your hand up. Bring it to a halt if—if I'm saying something you don't understand. Okay?
>
> *Respondent.* Yes, your Honor.
>
> *Trial Court.* Will you do that?
>
> *Respondent.* Yes.
>
> *Trial Court.* Okay. Thank you. The—well, okay. I'm gonna start with the plea. The—your attorney has said that you wish to plead no contest to the allegations in the Petition. Let me explain what that is.
>
> No contest does not mean you admit them. It doesn't mean you don't—you neither admit nor deny them. You don't deny them. You don't admit to them. You just—you are going to allow the Court to accept them as true for the purpose of its business today. Though you will not make any admission, the no contest plea will likely lead to the termination of your parental rights regarding [AP].

Do you understand that?

*Respondent.* Yes, your Honor.

*Trial Court.* Okay. If you don't wanna do that, we're all set up and ready to go. You're entitled to have a trial and make [petitioner's attorney] prove that the Court should take jurisdiction by a preponderance of the evidence and that a basis to terminate your parental rights exists by clear and convincing evidence. He would do that by calling witnesses, presenting exhibits. You wouldn't have to do anything because it's his burden of proof.

You've got your own lawyer there next to you. And you would have the right to have him cross-examine the witnesses and challenge the evidence.

Do you understand that?

*Respondent.* Yes.

*Trial Court.* Okay. At the end of [petitioner's attorney's] case, you, likewise, wouldn't have to, but your attorney could produce witnesses and present testimony and exhibits of your own.

Do you understand that?

*Respondent.* Yes.

*Trial Court.* You have the right to have a witness testify on your behalf even if he or she does not want to appear I would order that witness to be here.

Are you with me?

*Respondent.* Yes.

*Trial Court.* Okay. If—you could testify or you could choose not to and I would consider your testimony fairly. And if you chose not to I wouldn't hold that against you in making my decision.

If the Department prevailed and—and won the case, you would have the right to appeal that. An appeal is not a new trial. It's where a panel of three judges review the transcript that we're making now and the arguments of the parties to determine whether or not you had a fair trial. And you'd have the right to be represented on that appeal.

Are you—do you understand that?

*Respondent.* Yes, your Honor.

*Trial Court.* Okay. Those are the rights you'd be waiving in exchange for this no contest plea.

Do you understand that?

*Respondent.* Yes.

*Trial Court.* Okay. It has been pled in the—in the Petition that you have some cognitive disability and that's why I wanna make it very clear because I don't—you will even have an appeal period after today. But, I wanna make sure that you're not being coerced or pressured. You understand what you're doing.

Do you feel you understand what you're doing here today?

*Respondent.* Hm-mmm.

*Trial Court.* Is that a yes, ma'am?

*Respondent.* Yes

*Trial Court.* Okay. Hm-mmm doesn't show up on the transcript very well.

[Respondent's attorney], would you, likewise, give the Court your opinion as her lawyer as to—

*Trial Counsel.* Yes, your Honor.

*Trial Court.* The record should reflect that in another county, on a criminal matter which is much different burdens and standards, that she had been deemed incompetent to stand trial. So, I—how can I be satisfied that this is a voluntary?

*Trial Counsel.* Well, your Honor, today when my client made me aware that she was willing to voluntarily relinquish her custody, she was very clear and pointed on the fact that it was what—it was in the best interests of [AP]. And not— she wasn't concerned with her own position or the father's position. It was just pointed to the straight fact that ultimately it was gonna be best for the child.

*Trial Court.* Okay. And you felt she understood the process?

*Trial Counsel.* Absolutely. We went through it thoroughly multiple times and she was carrying on a conversation with me about it. So I'm just very confident with it.

Respondent focuses heavily on the affirmative answer to the question by her attorney regarding whether respondent believed termination would be in the best interest of AP, claiming that she "was susceptibl[e] to the suggestion that whatever the agency wants her to do is what is best for her daughter, even if [respondent] has no idea what the agency is asking of her." Despite there being no evidence that respondent did not understand the question, the trial court was aware

that respondent had her parental rights terminated to another child. Thus, because respondent was involved in a prior termination case, she presumably understood what in this case it meant to have her parental rights terminated.

Further, respondent provides no authority to support her argument that the trial court was required to make additional accommodations to ensure her plea was valid. Respondent asserts, for example, that the trial court should have ordered an updated psychological evaluation, appointed a guardian—in addition to an attorney—to assist respondent throughout this process, and should have asked her open-ended questions to ensure that she completely understood the questions asked of her and the rights she was relinquishing. Respondent cites no authority that such accommodations were required. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority."). To the extent respondent contends that the trial court should have accommodated her in compliance with something akin to those afforded under the Americans with Disabilities Act ("ADA"), we reject the argument as this court has stated that "a parent may not raise violations of the ADA as a defense to termination of parental rights proceedings." *In re Terry*, 240 Mich App 14, 25; 610 NW2d 563 (2000).

The court also questioned respondent's attorney regarding her comprehension and competence in light of the finding in her criminal case that she was incompetent to stand trial. When respondent's attorney was asked, specifically, whether respondent understood the nature of the proceedings, her attorney replied, "Absolutely." In light of this colloquy, and in light of the scant treatment respondent gives the issue on appeal, the trial court did not plainly err when it accepted respondent's plea despite the finding of incompetence in a sister court.[3]

In conclusion, the trial court record does not indicate that respondent's no-contest plea was not knowingly, intelligently, and voluntarily made. Therefore, respondent has failed to show that the trial court plainly erred by accepting her no-contest plea to the allegations in the petition.[4]

---

[3] Respondent also contends that the Department coerced her into making her no-contest plea by informing the trial court that she was willing to relinquish her parental rights. However, respondent herself testified during the adjudicatory hearing that she told her attorney that she was willing to relinquish her parental rights.

[4] Although respondent's statement of the questions presented only raises the issue of whether her plea was knowing and voluntary, respondent raises a host of other issues on appeal, including whether there were sufficient statutory grounds to terminate her parental rights and whether the Department made reasonable efforts toward reunification. Because these issues were not included in her statement of questions presented, they have been waived. *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."). Moreover, respondent did not raise these issues below and has, therefore, forfeited them absent a showing of plain error. See *Utrera*, 281 Mich App at 8.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

Even if the arguments had not been waived, they lack merit. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(j), which permits termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The trial court did not plainly err when it concluded there was a reasonable likelihood that AP would be harmed if returned to respondent's care. Respondent failed to demonstrate that she could properly care for AP, whose umbilical cord tested positive for marijuana at her time of birth. Moreover, respondent did not have any supplies to care for AP at her time of birth, and respondent herself told CPS that she did not think AP was safe living with her. When respondent and AP lived with another family, respondent violated the infant safe sleep agreement by sleeping in the same bed with AP, respondent would not wake up when AP cried and would ignore her. Respondent's caseworker testified that respondent failed to benefit from the three months of services provided during this case before she was incarcerated, failed to benefit from the services she received while incarcerated during this case, and failed to benefit from services she received in her prior CPS case, which resulted in the termination of her parental rights to her other child. Given this evidence, the trial court did not plainly err when it concluded there was a reasonable likelihood that AP would be harmed if returned to respondent's care.

Similarly, the trial court did not plainly err when it terminated respondent's parental rights despite the fact that no reasonable efforts were made toward reunification. The petition requested termination of respondent's parental rights because DHHS determined there was a risk of harm to AP, respondent's parental rights had previously been terminated, and respondent had failed to rectify the conditions that led to the prior termination. Moreover, the trial court found: (1) by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over AP under MCL 712A.2(b) were established, (2) there was clear and convincing evidence that one or more of the facts in the petition were true and established grounds for termination of parental rights under MCL 712A.19b(3)(j), and (3) termination of respondent's parental rights was in the child's best interests. See MCR 3.977(E).

-8-